PAMELA H. WILLMORE v. DANIEL E. WILLMORE.*

143 N. W. (2d) 630.

April 15, 1966—No. 40,189.

---

* Certified to U. S. Supreme Court June 29, 1966.

*Peterson & Holtze,* for appellant.
*Grathwol & Ploetz,* for respondent.

MURPHY, JUSTICE.

This is an action for separate maintenance and for custody of two minor children instituted by the plaintiff wife, a resident of Minnesota, against her husband, who is a nonresident. Constructive service was obtained upon defendant by publication as provided by statute. He appeared specially and by motion for summary judgment attacked the jurisdiction of the Minnesota court. The trial court denied that motion, and pursuant to Minn. St. 605.09(i) (L. 1965, c. 607), certified the issues presented as important and doubtful. The essential problem is whether, under the facts presented, the Minnesota court has jurisdiction to determine the right of custody of the minor children of the parties.

The fact situation is unique in that the mother has established a domicile in Minnesota, the defendant is a nonresident, the minor children are not physically present in this jurisdiction, and the exact address of both the children and the defendant father has not been definitely established.

We have examined the files, together with the affidavits submitted by the parties on motion for summary judgment. It appears that prior to November 7, 1964, the parties lived together in Washington, D. C., where the husband was employed by the United States Government. On that date, without knowledge or consent of the husband, plaintiff left their home and removed the children to her mother's home in St. Louis Park, Minnesota. Upon arrival in Minnesota, she advised the father by telephone that the children were residing with her at her mother's address. The children are 2 and 3 years of age. On December 21, 1964, the defendant husband came to Minnesota with his two brothers and, by a ruse, arranged for the absence of the wife from her mother's home. They then entered the home and forceably removed the children, allegedly assaulting members of the wife's family in the process. On December 23, the defendant notified the wife by telegram that the children were in Pocatello, Idaho, and a letter from him postmarked January 6, 1965, advised that they were in the Panama Canal Zone. The exact whereabouts of the defendant and the two children remains unknown to the plaintiff.

Plaintiff's affidavits would indicate that defendant has "sadistic tendencies" which made it necessary for her and the children to flee for their own physical safety. Although their domestic life has been marred by continual conflicts and difficulties, the defendant has informed the plaintiff that he will contest divorce proceedings. The defendant's affidavits assert that the wife is not emotionally stable, is not in good health, and not a fit person to have custody of the children. The conflicting charges contained in the opposing affidavits present fact issues as to domicile and the important issue of the best interests and welfare of the children.

The trial court was of the view that although the last established home of the parents was in Washington, D. C., the mother succeeded in establishing a domicile for the children at the home of her mother in Minnesota, and that the father's wrongful conduct in removing the chil-

dren from Minnesota did not defeat or change the domicile which the mother had established here. In a helpful memorandum made part of an order denying the husband's motion for a rehearing on the order denying summary judgment, the trial court expressed the view that the defendant "could not change the children's domicile by his wrongful action in fraudulently and violently seizing the children while their domicile was in Minnesota with the mother."

Difficulties arise in this case because the children are not physically present in the state and are presumably in the custody of the father, whose precise address is not known. It appears that they are located somewhere in the District of Columbia area, which might be one of several jurisdictions. Accordingly, the status of the children is beclouded by circumstances growing out of their clandestine removal or abduction from one state to another and, because of conduct of estranged parents unfettered by court decrees, the issue of jurisdiction is not easily answerable. Where there is a valid order determining custody of minor children, the authorities provide a fairly satisfactory guide as to the competing rights of parents residing in different states; but in the absence of such an order, the authorities cut in different directions depending upon the particular circumstances in each case.[1]

■ In State ex rel. Larson v. Larson, 190 Minn. 489, 252 N. W. 329, we emphasized that proceedings to determine the custody of a minor child are in the nature of an action in rem, the res being the status of the minor, and only the court of the state in which the minor is domiciled can fix or change that status. In Jacobs v. Jacobs, 136 Minn. 190, 194, 161 N. W. 525, 527, L. R. A. 1917D, 971, 973, we noted that under rules of early common law the father was entitled to custody of his children as against the mother under almost all circumstances, but that —

"* * * [t]he rule governing these relations has been gradually changing until now the rule giving the father the custody of the children as against the mother has been entirely abrogated in this state by the statute which provides that the father and mother, unless unsuitable, 'are

---

[1] Annotation, 13 A. L. R. (2d) 306, 308; Ehrenzweig, Conflict of Laws, pp. 281 to 282 and 242, note 23.

equally entitled to their custody and the care of their education.' G. S. 1913, § 7442."[2]

Our most helpful authority dealing with the considerations which enter into a determination of the jurisdictional right to determine custody is found in State ex rel. Glasier v. Glasier, 272 Minn. 62, 65, 137 N. W. (2d) 549, 552. In that case, we dealt with a situation where the father had brought the children to Minnesota from the established residence of the parties in the State of Washington one day before the mother instituted a divorce action and secured an order of the court granting her custody of the children. It is unnecessary for us to again review the large number of authorities gathered and discussed in that decision. Unlike the defendant in this case, who resorted to his own devices and forceably removed the children from this jurisdiction, the wife in the Glasier case appealed to the courts here by habeas corpus proceedings to have the children returned to her in the State of Washington, basing her right upon a valid order of the Washington court granting legal custody of the children to her. We not only gave full faith and credit to the order of the Washington court but also took into consideration the manifestly superior interest of the Washington court in the family relationship and the convenience and propriety of allowing conflicting claims to be settled there. In each case the consideration of overriding importance is the welfare and best interests of the children. There is occasional recognition that courts of two or more different jurisdictions may have concurrent jurisdiction over the custody of a child. Brown v. Stevens, 118 App. D. C. 57, 331 F. (2d) 803. We gather that, in the final analysis, all courts strive to act with wisdom and sincerity in matters pertaining to the welfare of the child and, by a policy of "comity," give effect to orders of foreign jurisdictions where such jurisdiction was in-

---

[2] Minn. St. 525.54 recognizes the parents equally as natural guardians of their minor children. Under our law, "the father and mother are the natural guardians of the minor children, and, if not unsuitable, are equally entitled to their custody." Spratt v. Spratt, 151 Minn. 458, 464, 187 N. W. 227, 229.

District of Columbia Code (1961 ed.) § 21-101, reads as follows: "The father and mother shall be the natural guardians of the person of their minor children. If either dies or is incapable of acting, the natural guardianship of the person shall devolve upon the other."

voked on a realistic and practical basis. Annotation, 13 A. L. R. (2d) 306; Ehrenzweig, Conflict of Laws, pp. 281 to 282; People ex rel. Halvey v. Halvey, 185 Misc. 52, 55 N. Y. S. (2d) 761, affirmed, 330 U. S. 610, 67 S. Ct. 903, 91 L. ed. 1133; White v. White, 77 N. H. 26, 86 A. 353; Boardman v. Boardman, 135 Conn. 124, 62 A. (2d) 521, 13 A. L. R. (2d) 295; Sampsell v. Superior Court, 32 Cal. (2d) 763, 197 P. (2d) 739.

It appears that the trial court was influenced by those decisions which hold that where a married woman acquires a separate domicile her domicile controls that of the minor children of the parties who live with her, and which give expression to the growing liberality of the courts in permitting the mother to establish and control the domicile of her children.

Here, the trial court felt that as a matter of right the mother should have recourse to a court in some jurisdiction to seek custody of her minor children, even though she was unable to get personal service on the defendant husband. The trial court's order denying summary judgment was keyed to his determination that the mother had in fact established the domicile of the children in Minnesota and that the abduction of the children from the state did not change that status. Since the mother has as much right to the children as the father, there is no reason why she could not establish the domicile of her children in this state. It seems to us that in the absence of a conflicting court order from another jurisdiction, the only meaningful domicile of the children is in Minnesota, and plaintiff should have the right to invoke the jurisdiction of our courts. Certainly she should not be left helpless in face of her husband's conduct in removing the children from one jurisdiction to another. Should the mother eventually prevail, the question of whether the order of our court will be accorded full faith and credit will have to await determination when the time comes for its enforcement.

■ It is unnecessary for us to further explore the authorities at this time except to state that we should hesitate to say that on the basis of the showing made on the motion for summary judgment the trial court was in error. As we have already indicated, in this inexact and unsatisfactory area of the law, each problem should be passed upon on a

case-by-case basis. Here, the facts are yet to be determined. As the trial court observed in his memorandum,

"In this case if the defendant can establish that he and the children are now domiciled in the District of Columbia and that they lived their married lives there, then perhaps the court might later conclude that the parties should be referred to the courts of the District of Columbia for determination of custody. However, as indicated above, the defendant has not shown that he now resides in the District of Columbia and in fact has indicated this is not true."

The trial court was of the view that since the father, as far as the record showed, had not established a domicile in any particular place, the mother certainly should have the right to invoke the jurisdiction of the courts in the place where she had established the domicile of the children before they were wrongfully taken by the father. In the memorandum made a part of the order denying defendant's petition for rehearing, the trial court noted that the defendant had made a purported showing by way of affidavit that the children now resided with him in Washington, D. C., but that "[d]efendant's affidavit showing in this respect conflicts with the showing by affidavit of his counsel that the defendant's residence has been in Pocatello, Idaho." The court further said that "the defendant should have made a showing as to the actual residence address or addresses of the defendant and his children in Washington, D. C., and also should have shown whether the children and he were residing at the same address and who was taking care of the children in his absence."

It should be kept in mind that this matter has arisen in proceedings for summary judgment under Rule 56, Rules of Civil Procedure. So far as applicable here, that rule comprehends that the judgment sought may be rendered if the pleadings, depositions, affidavits, etc. "show that there is no genuine issue as to any material fact and that either party is entitled to judgment as a matter of law." Rule 56.03. Where the moving papers disclose that a genuine issue of material fact is present, the motion for summary judgment should be denied. Lindgren v. Sparks, 239 Minn. 222, 58 N. W. (2d) 317; Schoening v. United States Aviation Underwriters, Inc. 265 Minn. 119, 120 N. W. (2d) 859; Bustad v.

Bustad, 263 Minn. 238, 116 N. W. (2d) 552; Minneapolis, St. P. & S. S. M. R. Co. v. St. Paul Mercury Ind. Co. 268 Minn. 390, 129 N. W. (2d) 777.

While we affirm the trial court on the ground that there was a sufficient showing to warrant that it assume jurisdiction, we do not go beyond that point since there are issues of fact to be determined, including the best interests and welfare of the children. These issues must be left for trial, and if we are to pass upon the merits of the dispute between the parties, they should be properly presented to us on appeal with a record and proper findings of fact by the trial court.

Affirmed.