## IN RE WELFARE OF WENDY LONGSETH AND OTHERS.
## HERMAN E. BEHRENDS v.
## COLUMBIA COUNTY, WISCONSIN.

162 N. W. (2d) 365.

November 8, 1968—No. 41077.

*Paul A. Skjervold,* for appellant.

*John J. Kelly, Kermit A. Gill,* and *William F. Leitsch,* for respondent.

KNUTSON, CHIEF JUSTICE.

This is an appeal from an order of the Juvenile Division of the Hennepin County District Court denying a petition requesting that protective supervision or legal custody of three minor children be given to an appropriate person or agency in Minnesota.

The relevant facts are that five children were born to Curtis and Ruby Longseth. Wendy, born on December 16, 1952, was 14 years of age at the time of the hearing; Sherry, born July 8, 1954, was then 12 years of age; Brenda, born June 6, 1956, was 10 years of age; Randy, born December 26, 1963, was 4 years; and Lisa, born April 24, 1965, was 2 years. On application of the father, and with the consent of the mother, the Juvenile Court of Columbia County, Wisconsin, determined that the four oldest children were dependent children and granted their custody to the Columbia County Welfare Department on September 27, 1966. Lisa, the youngest, was left with the mother. Three days later, on September 30, 1966, the father, Curtis Longseth, murdered the mother and then committed suicide. On October 3, 1966, Lisa was also found to be a dependent child and her custody was transferred to the Columbia County Welfare Department.

Under an order of the Columbia County Juvenile Court continuing the custody of all five children in the county welfare department, the three eldest children were placed with Mr. and Mrs. Edwin Boelte in Columbia County. The maternal grandparents, who reside in Hennepin County, Minnesota, were appointed general guardians of the two youngest by the Hennepin County Probate Court with the approval of the Columbia County Welfare Department on November 14, 1966, and these children have resided with their grandparents in Hennepin County since that time.

In August 1967, the three oldest children were permitted to visit the home of their grandparents in Minneapolis for one week. They were met at Eau Claire, Wisconsin, and taken to Minneapolis, and were to be returned at the end of the week. After arriving in Minneapolis, the children told their grandparents that they had been abused by the Boeltes by severe beatings and other mistreatment which we need not relate in detail here. Suffice it to say that after receiving this information, the grandparents filed a petition with the Juvenile Division of the Hennepin

County District Court requesting that the children be declared neglected children and that their temporary custody be granted the Hennepin County Welfare Department. A hearing followed on September 11, 1967, at which the Columbia County Welfare Department appeared by its corporation counsel. Testimony was taken in which the children related the abuses of which they had previously complained to their grandparents, and there was other testimony by relatives of the children refuting such claims. The district court thereafter made its order directing that the children be returned to Mr. Robert W. Andrews of the Columbia County Welfare Department, their legal guardian, but that they not be returned to the Boeltes' home until there has been a formal hearing in Wisconsin to ascertain the truth of the claims made by the children.

The questions raised by this appeal are whether the Hennepin County District Court has jurisdiction to order the children placed in the custody of a person or agency in Minnesota; and, if it has such jurisdiction, whether it abused its discretion in denying the relief requested.

No one disputes the fact that the children are, and always have been, domiciled in the State of Wisconsin. We have had occasion in recent years to consider similar jurisdictional questions under a variety of circumstances so it is not necessary that we reexamine all the authorities that may be found in our decisions. State ex rel. Larson v. Larson, 190 Minn. 489, 252 N. W. 329, involved the right of the District Court of St. Louis County to change the custody of a child born to parents who then lived in Iowa. They were later divorced in that state, and the Iowa court awarded custody of the child alternately to each parent for 6 months of each year. The mother moved to Duluth, and when the child came there to spend 6 months with her, she refused to permit it to return to the father in Iowa. We held that the question of jurisdiction in circumstances of that kind was a new one in this state, saying (190 Minn. 491, 252 N. W. 330):

"* * * A proceeding to determine custody of a minor child partakes of the nature of an action *in rem*, the *res* being the child's status or his legal relationship to another. Except where necessary as a police measure (see Hartman v. Henry, 280 Mo. 478, 217 S. W. 987—neglected child), it would seem that the only court which has power to fix,

to change, or to alter this status is the court of the state in which the minor child is domiciled."

We held that the court had jurisdiction to determine the custody of the child in spite of the Iowa divorce decree, apparently on the theory that the domicile of the child was changed when it came to Minnesota to spend 6 months with the mother.

Willmore v. Willmore, 273 Minn. 537, 143 N. W. (2d) 630, involved the custody of two minor children. The mother had established a domicile in Minnesota and the father was a nonresident. The father forcibly removed the children from Minnesota. We held that under the circumstances of that case our court had jurisdiction to determine custody of the children even though they were not present in Minnesota.

In Hughes v. Hughes, 276 Minn. 380, 150 N. W. (2d) 572, the father was in California and the mother in Minnesota. In a habeas corpus proceeding to determine custody, we held that the mother had a right to question the jurisdiction of the California court.

State ex rel. Glasier v. Glasier, 272 Minn. 62, 137 N. W. (2d) 549, reviews many of the authorities on this subject. In that case the children were removed from the State of Washington to the State of Minnesota by the father. They had their domicile in Washington. We held that the children should be returned to the State of Washington where questions relating to their future custody might be considered and determined by the courts of that state.

From these cases it is difficult to formulate any all-inclusive rule as to when and under what circumstances the courts of this state will determine custody of children either found here, brought here under varying circumstances, or removed from the state.

The case relied upon mainly by petitioner is Hartman v. Henry, 280 Mo. 478, 217 S. W. 987. In that case the custody of a child domiciled in the State of Kansas was given to a person by the Kansas court. The child was found, neglected, on the streets of Kansas City, Missouri. The Missouri court apparently held that it had jurisdiction to determine the custody of the child and need not give full faith and credit to a decree of the Kansas court, but the decision was based on a procedural aspect of habeas corpus rather than upon the substantive rights of the parties.

Ultimately the question seems to involve a determination of whether full faith and credit must be given to the decree of a court of a foreign state in matters involving custody. Probably the better rule is that it does not involve constitutional issues at all, but is simply a matter of comity and that the courts of the state which has the greatest interest in the child ought to be permitted to determine its custody. Ordinarily, that would be the state in which the child is domiciled; but the exception to this rule which is to be gathered from the decisions is that when the child is found neglected or dependent in this state, our courts will determine custody in order that the child may be protected.

Our cases,[1] as well as those from foreign jurisdictions, frequently speak interchangeably about comity and full faith and credit under the Constitution as a basis for respecting decrees and orders of a domiciliary state in matters involving custody of children. It would seem that if decision rests strictly on full faith and credit under the Constitution, there could be no exceptions under which our court could assert its right to pass on the custody of a child; whereas, if decision rests on comity, there is no difficulty in doing so when the welfare of the child requires it. For a discussion of this subject, see Stansbury, *Custody and Maintenance Law Across State Lines*, 10 Law and Contemporary Problems 819, 831.

In the case now before us, there is no reason to suppose that the courts of Wisconsin will be less solicitous of the welfare of these children than would the courts of Minnesota. The children are domiciled in Wisconsin, and a Wisconsin court has already exercised its supervisory powers by placing them in the custody and under the supervision of a county welfare department and appointing a guardian for them. There is no reason why the petitioner here cannot go to the courts in the State of Wisconsin and present the same facts as he has presented to our court. We have no reason to believe that if the children are being abused by the Boeltes the Wisconsin courts will not take proper corrective action. The mistreatment, if there is any, has taken place in Wisconsin. There has been no abuse of the children in the State of Minnesota. We think the trial court was right in holding that the children ought to be

---

[1] See, Tureson v. Tureson, 281 Minn. 107, 160 N. W. (2d) 552.

returned to Wisconsin and in requesting that the information transmitted by them to their grandparents be investigated by the proper Wisconsin court.

Affirmed.