**In re the Marriage of Stuart Howard NOLAN, petitioner, Appellant,**

**v.**

**Linda Otis NOLAN, Respondent.**

**No. C7–83–1435.**

Court of Appeals of Minnesota.

Aug. 28, 1984.

Robert F. Henson, Glenn Olander-Quamme, Henson & Efron, P.A., Minneapolis, for appellant.

Edward L. Winer, Jonathan J. Oviatt, Moss & Barnett, P.A., Minneapolis, for respondent.

Heard, considered and decided by PARKER, P.J., and FORSBERG and CRIPPEN, JJ.

## OPINION

CRIPPEN, Judge.

Both parties seek review of division of property in an amended judgment and decree. We affirm.

## FACTS

Stuart and Linda Nolan were married on May 23, 1970. Appellant Stuart Nolan was 45 years of age, and respondent 34 at the time of the dissolution. They have two children.

Stuart Nolan is founder and president of The Stuart Corporation, which is engaged in property management, development, brokerage and construction. The Nolans havè interests in thirteen other real estate corporations or partnerships. There is a voluminous record as to the assets held by the various corporations in which the Nolans have an interest, the valuation of those assets, and the liabilities which offset them.

Linda Nolan has worked primarily as a homemaker. She has done interior design work through her own company, Nolan Design Studios, but almost solely on referrals from The Stuart Corporation. She has no degree in interior design, and would need additional training in order to pursue an independent career.

The trial court made the following basic distribution of marital property in its amended judgment and decree:

| Assets | Stuart | Linda |
|---|---|---|
| Stuart Corp. | $220,000 | |
| Homestead | | $246,900 |
| Adjacent lot | 55,000 | |
| Excelsior condo | 49,100 | |
| Colorado condo | 205,000 | |
| Wisconsin home | 51,027 | |
| Partnership interests | (193,210) | |
| Additional property | 387,502 | 80,386 |
| Liabilities | (81,700) | (42,893) |
| | $692,719 | $284,393 |

The court also ordered Stuart to pay Linda $250,000 in five annual installments of $50,000 each. This amount was in addition to child support and maintenance awarded. Disregarding for the moment the discount factor for present value of future dollars, this award made the overall property distribution as follows:

| Stuart | Linda |
|---|---|
| $442,719 | $534,393 |

The dominant item of dispute in the valuation and distribution of the marital estate is a $500,000 personal obligation claimed by Stuart Nolan, owing to the First Bank of St. Paul, to guarantee a construction loan made to the Shepard Park Development Corporation [SPDC]. Nolan has a 25% shareholder interest in SPDC, along with three other investors, each of whom also obligated himself to repay an equal share of a $2 million note.

SPDC, in turn, had an obligation to repay these shareholder "loans" made on its behalf. Stuart Nolan characterized this as "an accounting entry" without value because the corporation's liabilities exceed its assets. The note was backed by a second mortgage on the property of Shepard Park Plaza, a limited partnership in which the same four individuals are engaged.

Thus, the loan was part of a financing arrangement which was intended to reduce the indebtedness of SPDC so that the Bank would renew a portion of the construction loan to SPDC. Nolan testified that he considered it a personal obligation, and not a contingent liability. He testified that it was due on demand, but that he did not know when payment would be required. He admitted that payments on interest were being made out of the Shepard Park Plaza account, but stated that this was solely to simplify the transaction for the four obligors.

Stuart Nolan testified that he did not include the $500,000 loan when he calculated the value of the marital interest in either SPDC or Shepard Park Plaza. The trial court in valuing the Nolan's interests in SPDC, Shepard Park Plaza, and Shepard Park, closely followed Stuart's valuations.

The second issue involves the amount of Stuart Nolan's cash on hand at the time of trial. Nolan had furnished a financial statement showing a checking account balance of $8,414, and a Merrill Lynch cash management account balance of $20,736 as of December 31, 1982. The only evidence at trial four months later, however, was Nolan's testimony that he had a $5,866 checking account balance.

The issues raised by respondent relate to the trial court's amendment of the judgment and decree to make a $250,000 cash payment imposed on Stuart payable to Linda in five annual installments, and the court's award of a lot adjacent to the homestead, improved only by a tennis court, to Stuart.

## ISSUES

1. Did the trial court err in failing to reduce the marital assets by a $500,000 personal obligation owed by Stuart Nolan to guarantee a corporate loan?

2. Did the trial court err in valuing Stuart Nolan's cash on hand as of December 31, 1982, rather than as of the date of trial?

3. Did the trial court err in amending its judgment to make a $250,000 one-time payment to Linda Nolan payable in five annual installments?

4. Did the trial court abuse its discretion in awarding Stuart Nolan the lot adjacent to the homestead?

## ANALYSIS

■ A division of marital property must be "just and equitable." Minn.Stat. § 518.58 (1982). In determining an appropriate distribution, the court must consider "all relevant factors," including those listed in the statute. *Id.* Absent an abuse of discretion, the division determined by the trial court will not be disturbed. *Taylor v. Taylor*, 329 N.W.2d 795 (Minn.1983). Related findings of fact must be upheld unless clearly erroneous. Rule 52.01, Minn.R. Civ.P.

### 1. The personal note

The trial court originally made a finding that the $500,000 owed on the note signed by Stuart was a liability of the parties. Following a motion for an amended judgment and decree made by appellant, in which he claimed that the trial court had failed to deduct the liabilities of the parties, the court explained its treatment of the personal note in its Order to Amend. Appellant contends that the trial court failed to properly consider the personal note in its distribution of the property. We disagree.

The trial court gave full consideration to the evidence of Stuart's personal obligation on the note. The court gave two reasons for its decision not to make an adjustment in the property distribution following the motion to amend. First, it stated that Nolan's personal obligation had already been deducted in computing the (negative) values of SPDC and Shepard Park and deriving the value of the Nolans' interest in these entities. In reviewing the record, we agree with appellant that the trial court appeared to follow the valuations submitted to it by Stuart Nolan, which did not include the personal note. Secondly, the trial court stated that Nolan's obligation was a speculative, or contingent liability.

We are persuaded that the distribution of the property was just and equitable, and that this is true whether or not the personal note of Stuart Nolan is included in the complex mathematical calculation of values of his investment interests.

■ Minn.Stat. § 518.58 requires proper consideration of a broad range of factors in determining what is a "just and equitable division." It states as follows:

"The court shall base its findings on all relevant factors including the length of the marriage, any prior marriage of a party, the age, health, station, occupation, amount and sources of income, vocational skills, employability, estate *liabilities*, needs, *opportunity for future acquisition of capital assets*, and *income* of each party." (emphasis added).

The $500,000 obligation assumed by Stuart Nolan was for the purpose of guaranteeing the continued development of SPDC's project, Regency Condominiums. This was a capital asset, along with the Nolan's other real estate interests, which had considerable potential for the accumulation of profits and the generation of further capital assets. All of the capital-generating marital assets, including the interest in SPDC, were awarded to Stuart Nolan. These interests, despite their decline in value due to market conditions at the time of trial, were generating a substantial yearly income for Nolan, who earned $331,018 of income in 1982. There is no doubt, as a matter of equity, that appellant retains a substantial capacity, under the amended judgment and decree, to continue to acquire assets and produce income.

■ The statute does not require an equal division of marital property. *Ruzic v. Ruzic*, 281 N.W.2d 502 (Minn.1979). In *Ruzic*, the wife received the smaller share of the assets, but the property she received generated rental income. Here, Stuart Nolan received all income generating assets.

It is generally held that speculative or contingent liabilities should not be considered in determining the net marital estate. *See, e.g., Hansen v. Hansen*, 302 N.W.2d 801 (S.D.1981). Our Supreme Court has held that potential tax liabilities need not be considered in distribution of marital property if the potential liability is too speculative. *Aaron v. Aaron*, 281 N.W.2d 150 (Minn.1979).

The trial court here indicated that the personal liability of Stuart Nolan on the note was "speculative at best." In view of the speculative nature of the Nolans' real estate interests in general, however, we need not approve or disapprove of the trial court's characterization of the note obligation.

■ The trial court's responsibility to equitably divide the marital assets did not allow it to mathematically factor the $500,000 liability into the distribution. That liability was inextricably tied to the speculative, and income-generating, character, of the assets awarded to appellant. The trial court's failure to mechanically subtract that liability from Stuart's share of the estate, does not imply that full consideration was not given to the personal note. Indeed, such an adjustment of the property division as appellant suggests would have been absurd and inequitable, considering the absence of any profit-making assets among those awarded to Linda Nolan.

## 2. Other issues

The trial court found that Stuart Nolan's cash on hand at the time of trial was $5,876 in a checking account, and $20,736 in a cash management account. Nolan contends that this finding was erroneous, that the only evidence at trial was that his cash on hand was reduced to the $5,866 in his checking account (clerical error in the court order).

The cash management account figure appeared in Respondent's Exhibit 7, showing financial position as of December 31, 1982. At trial, Nolan maintained that he had completely depleted the cash management account.

■ In view of the size of the marital estate, the sums claimed to have been depleted from the cash management account did not affect the overall equity of the distribution. Moreover, the court may disregard depletions of marital assets prior to trial, in making its property division. *Bollenbach v. Bollenbach*, 285 Minn. 418, 175 N.W.2d 148 (1970).

The trial court amended its judgment to stretch the $250,000 ordered paid by Stuart to Linda Nolan over a four-year period, because of Stuart Nolan's "cash flow position." Respondent challenges this deferral, pointing out that the present value of the award is thereby considerably reduced.

■ The deferral of the $250,000 payment was based on an overall reassessment of the equities of the distribution. There was considerable evidence at trial that the marital real estate interests, awarded entirely to Stuart, were experiencing a negative cash flow. The trial court properly balanced the current unprofitability of these businesses, against their long-term opportunities for future acquisition of capital assets, *see*, Minn.Stat. § 518.58, in deferring the $250,000 payment.

■ Respondent also challenges the trial court's award of the lot adjacent to the homestead, valued at $50,000, to Stuart in the amended judgment and decree. While this award was an overcompensation for the $20,000 attorneys fees imposed on Stuart, the change came in response to Stuart's challenge to the overall equitability of the property division. The trial court's readjustment of the property division in its amended judgment and decree was within its discretion. *Taylor v. Taylor*, 329 N.W.2d 795 (Minn.1983). The fact that the lot is adjacent to the homestead does not, under the facts of this case, necessarily prolong marital strife. *See, Bogen*

*v. Bogen*, 261 N.W.2d 606 (Minn.1977) (shared rights of occupancy are the primary objection to awards of undivided interests in real property). Finally, respondent's concern over the effect of this award on orderly visitation schedules can be dealt with under the trial court's continuing jurisdiction over visitation. *See*, Minn.Stat. § 518.175(5).

The division of marital property, particularly where the parties have acquired a considerable estate, presents difficult issues. The trial court here gave full consideration to all issues presented, on a voluminous record. Not only did it make specific findings, *cf.*, *Rogers v. Rogers*, 296 N.W.2d 849 (Minn.1980) (remand for more specific findings), but it reconsidered the issues and readjusted the property distribution on a motion for amended judgment and decree. We conclude that the resulting division of property was just and equitable.

### DECISION

With or without inclusion of Stuart Nolan's $500,000 personal liability in the mathematical calculation of the value of assets, the trial court's division of the marital estate was just and equitable. Similarly, there was no abuse of discretion in the valuation of cash-on-hand, the deferral of the cash award, or the award of the lot adjacent to the homestead.

Affirmed.