In re the Marriage of Carole Mary KENNEDY, Petitioner, Appellant,

v.

Duane Allen KENNEDY, Respondent.

No. C9–85–257.

Court of Appeals of Minnesota.

Nov. 12, 1985.

Ellen Dresselhuis, Minneapolis, for appellant.

M. John Steward, Steward, Perry, Mahler & Bird, P.A., Rochester, for respondent.

Heard, considered and decided by WOZNIAK, P.J., and PARKER and LESLIE, JJ.

## OPINION

PARKER, Judge.

Carole Mary Kennedy appeals from the trial court's judgment and decree dissolving her marriage to Duane Allen Kennedy. We affirm the trial court's valuation and division of marital property, but reverse and remand on the issues of child custody and support, attorney's fees, and spousal maintenance.

## FACTS

Appellant Carole Kennedy and respondent Duane Kennedy were married in 1970. At the time of the trial, Carole Kennedy was 37 and Duane Kennedy was 39 years old. They met while attending Hamline University in St. Paul, Minnesota, where Carole Kennedy obtained a degree in anthropology and Duane Kennedy a degree in education. In 1973, Duane Kennedy began law school at Hamline University. Both parties worked while he completed his legal education and passed the 1976 bar examination. After practicing for two years, Duane Kennedy was hired as an assistant county attorney in Olmsted County. He supplements his county salary with a part-time personal injury law practice. Carole

Kennedy has not been steadily employed since 1977, when she stopped working in anticipation of the birth of their second child. She has done some occasional typing for a court reporter inside the home; in 1983 she was employed for six months as a temporary secretary in Rochester.

The parties have lived in their present rural home near Grand Meadow, Minnesota since 1979. There was extensive testimony describing the property as an ideal place in which to raise children. The family was involved in numerous outdoor activities, including raising and riding horses. During the pendency of this proceeding, the parties and their children resided together at the homestead under a temporary order. Duane Kennedy was eventually awarded possession of the residence by the trial court.

Although Carole Kennedy had initially considered moving away from the Grand Meadow area to pursue a career in court reporting, at the supplemental hearing in October 1984 she indicated that she intended to stay. She testified that she had put money down on a house in Grand Meadow and had applied for a job in the area. At the time of oral argument before this court, however, one of her parents had passed away and she was residing in Ashland, Wisconsin with her surviving parent.

A two-day trial was held in August 1984 and a supplemental hearing in October 1984. The trial court split custody of the parties' four children by awarding sole custody of the three oldest children, ages 11, 6, and 4, to Duane Kennedy and temporary custody of the youngest child, age 5½ months, to Carole Kennedy. The marital estate was valued and divided equally between the parties. Duane Kennedy's property includes the mortgaged home, checking account, trust account, and PERA pension, as well as personal property. Carole Kennedy was awarded personal property worth $5,050 and cash in the amount of $6,000, to be paid by Duane Kennedy over a period of five years. Carole Kennedy was also awarded spousal maintenance in the amount of $350 a month for six months and $2,000 in attorneys' fees.

Carole Kennedy appeals.

## ISSUES

1. Did the trial court err in its valuation and division of the parties' marital property?

2. Did the trial court abuse its discretion in awarding appellant only $2,000 in attorneys' fees?

3. Did the trial court abuse its discretion in awarding appellant maintenance for a period of six months?

4. In making its custody decision, did the trial court err by failing to consider the role of the primary caretaker?

## DISCUSSION

I

A trial court has broad discretion to determine what division is just and equitable to the parties in a dissolution action. *Stevens v. Stevens*, 300 N.W.2d 1 (Minn.1980); Minn.Stat. § 518.58 (1984). Its decision will be affirmed if it has a "reasonable and acceptable basis in fact and principle." *Kreidler v. Kreidler*, 348 N.W.2d 780, 782–83, (Minn.Ct.App.1984) (quoting *Dubois v. Dubois*, 335 N.W.2d 503, 507 (Minn.1983)).

Carole Kennedy contends that the trial court undervalued a number of the parties' assets, including the homestead, the horses, and certain horse equipment ("horse tack"). "Exactitude is not required of the trial court in the valuation of assets * * *; it is only necessary that the value arrived at lies within a reasonable range of figures." *Johnson v. Johnson*, 277 N.W.2d 208, 211 (Minn.1979) (quoted by *Ebnet v. Ebnet*, 347 N.W.2d 840, 842 (Minn.Ct.App. 1984) (evidence supplied by husband's answers to interrogatories supported finding with respect to value of parties' home)).

■ In this case, the trial court's valuation of the parties' homestead was well within the range of all of the figures presented. The values assigned to the horses and horse equipment were based on

Duane Kennedy's answers to interrogatories. Because Carole Kennedy offered no evidence to the contrary, she cannot now claim that these values are clearly erroneous. *See Jensen v. Jensen,* 276 N.W.2d 68, 69 (Minn.1979).

Carole Kennedy contends that the trial court erred in its computation of the parties' debts. Admittedly, the trial court did err in crediting Duane Kennedy with the same $300 debt twice. Nonetheless, this error is minimal considering the total debt load he was ordered to assume.

Finally, Carole Kennedy insists that deferral of the $6,000 property settlement over a period of five years was not justified, considering her immediate need and Duane Kennedy's clear ability to pay the entire sum. Payments over a period of time are ordinarily favored, absent reasons warranting immediate payment. *See Bollenbach v. Bollenbach,* 285 Minn. 418, 438–39, 175 N.W.2d 148, 161 (1970) (immediate payment ordered because there was a risk that ex-spouse might squander assets). While the trial court provided no reasons for its decision deferring the $6,000 payment in this case, we cannot conclude from the record that this decision was an abuse of discretion. *See Nolan v. Nolan,* 354 N.W.2d 509, 513 (Minn.Ct.App.1984), *pet. for rev. denied,* (Minn.Dec. 20, 1984) (deferral of $250,000 payment based on an overall assessment of the equities of the distribution upheld).

## II

Allowance of attorney's fees in dissolution cases rests almost entirely within the discretion of the trial court and the award will not be disturbed absent a clear abuse of discretion. *Kirby v. Kirby,* 348 N.W.2d 392, 394 (Minn.Ct.App.1984). After considering the financial resources of both parties, the court may "require one party to pay a reasonable amount necessary to enable the other spouse to carry on or to contest the proceeding." Minn.Stat. § 518.14 (1984).

Carole Kennedy's legal fees total $7,103.34; Duane Kennedy was ordered to pay $2,000 or about 30 percent of the actual fees. Carole Kennedy claims that this amount is inadequate to enable her to pursue her legal rights. We agree. The disparity between the parties' financial resources is great. Carole Kennedy is unemployed and received none of the parties' cash assets, while Duane Kennedy's resources, income and potential earnings are substantial in comparison. In failing more completely to cover appellant's expenses, the trial court clearly erred.

Duane Kennedy contends that these attorneys' fees represent a duplication of legal efforts because Carole Kennedy has changed counsel twice since the commencement of this proceeding. This is not an unreasonable objection. The award of attorneys' fees is therefore remanded to the trial court for reconsideration. The trial court may disregard any fees which appear duplicatory.

## III

A spouse is entitled to an award of maintenance if he has too little "property" to provide for "reasonable needs," especially during a period of education, and if he cannot "adequately support" himself from earnings in "appropriate employment." Minn.Stat. § 518.552, subd. 1 (1984). Factors to consider in determining the "just" amount and duration of maintenance include the resources of each party, the duration of the marriage, contributions of each spouse to the marriage, time the recipient needs for education leading to "appropriate" employment, and the couple's previous standard of living. Minn.Stat. § 518.-552, subd. 2. A recent amendment also requires the court to consider other factors, including "[t]he loss of earnings, * * * and other employment opportunities foregone by the spouse seeking spousal maintenance." 1985 Minn. Laws ch. 266, § 2 (effective August 1, 1985).

Carole Kennedy was awarded maintenance in the amount of $350 per month for a period of six months. In light of the

controlling statutory guidelines, this award is grossly inadequate. Carole Kennedy is unemployed and unable to provide for her reasonable needs. She needs maintenance for a short period of time to offset a reduced standard of living. She may also need rehabilitative maintenance to provide for her reasonable needs during a period of education and to allow her ample time within which to reenter the job market and become self-supporting. Finally, she has foregone employment opportunities in order to care for her family and contribute to her husband's career. The trial court's award of spousal maintenance is reversed and remanded for further consideration in accordance with the statutory guidelines.

## IV

A determination of child custody must be based on the best interests of the child and the court may not prefer one parent over the other solely on the basis of the sex of the parent. Minn.Stat. § 518.17, subd. 3 (1984). In assessing a child's best interests, a court must consider "all relevant factors," including the nine enumerated factors set out in Minn.Stat. § 518.17, subd. 1. The supreme court recently held that consideration of these factors "require[s] that when both parents seek custody of a child too young to express a preference for a particular parent and one parent has been the primary caretaker, custody be awarded to the primary parent absent a showing that that parent is unfit to be the custodian." *Pikula v. Pikula,* 374 N.W.2d 705, 713 (Minn.1985).

The primary parent doctrine complements the statute by further insuring that a custody decision will serve the children's best interests. Several reasons were given for adoption of this preference, including the statutorily recognized need for stability in children's lives and the fact that this stability is most often provided by the primary caretaker, the inherent imprecision in the application of the other statutory factors, and the pressing need for coherent decisionmaking. *Id.* at 712.

In this case, the trial court found a "fairly equal balance" between most of the statutory best interest factors. As to three of the factors central to the concept of stability[1], however, the trial court noted:

I feel that the children have a total adjustment to their rural home and their school. They have lived together in a stable home, for over five years. They have become adapted to a very delightful, healthy and educational environment, and have clearly profited from the exposure. Respondent's position appears reasonably secure, and permanence of the family unit seems assured.

I have considered, also, the uncertainty of petitioner's future plans. As recently as August she intended to move to Wisconsin, where she intended to go to school. By October she apparently changed her mind and made tentative plans to move to Stewartville. However, those plans, as yet, include neither job nor school.

Examination of these findings reveals that the trial court's failure to consider the role of the primary caretaker resulted in a decision which the court in *Pikula* sought to avoid, i.e. one which misapplies the statute by seemingly discriminating against a traditional homemaker.

The children have lived together in a stable and satisfactory environment for over five years due to the efforts of *both* appellant and respondent. The trial judge commendably had a personal and private interview with the three oldest children. He was clearly impressed by the children's enthusiasm toward their "farm/home." The idyllic picture of this environment assumes a prominent position in the trial

---

**1.** Four of the nine statutory criteria rest on the "centrality of continuity of care and environment to the best interest of the child." *Pikula,* at 711 n. 1. The trial court in this case based its decision on three of those factors: (d) the child's adjustment to his home, school, and community; (e) the length of time the child has lived in a stable, satisfactory environment and the desirability of maintaining continuity; and (f) the permanence of the proposed custodial unit. *See* Minn.Stat. § 518.17, subd. 1.

court's findings. As such, the trial court seemingly gave preference to the respondent father because he was awarded the home. It seems dubious that the legislature intended a trial court's award of property to be determinative of custody.

The trial court's finding that Duane Kennedy's position appears reasonably secure while Carole Kennedy's is not, appears, under the facts of this case, to penalize her for assuming the role of traditional housewife and mother. In enacting laws designed to treat proposed custodians equally, we do not believe that the legislature intended to discriminate against the traditional homemaker; Carole Kennedy's insecure job situation is inherent in a traditional homemaker-breadwinner family dissolution. It cannot be equated with instability and has little bearing on her ability to care for her children. *Weatherly v. Weatherly*, 330 N.W.2d 890, 892 (Minn.1983). Sufficient support can be ordered to stabilize the home finances should she be awarded custody upon remand.

The trial court's emphasis on appellant's uncertain future plans is misplaced. *Sefkow v. Sefkow*, 372 N.W.2d 37 (Minn.Ct. App.1985), *pet. for rev. granted for purpose of remanding*, 374 N.W.2d 733 (Minn. 1985). Nonetheless, upon remand we think it important that the trial court examine into the proposed custodial arrangements and career plans of each of the parents, bearing in mind that the record supports his finding that each of the parties is a suitable and proper person to have custody.

■ By failing to consider the question of primary caretaker, the trial court avoids recognition that emotional and psychological stability is "most often provided by and through the child's relationship to his or her primary caretaker—the person who provides the child with daily nurturence, care and support." *Pikula*, at 711. The trial court mistakenly interprets "stability" to mean financial stability and ownership of the homestead, rather than analyzing the intimacy of the relationships of children and parents.

*Pikula* directs a trial court to determine which parent has taken primary responsibility for the performance of the following caring and nuturing activities:

(1) preparing and planning of meals; (2) bathing, grooming and dressing; (3) purchasing, cleaning, and care of clothes; (4) medical care, including nursing and trips to physicians; (5) arranging for social interaction among peers after school, i.e. transporting to friends' houses or, for example, to girl or boy scout meetings; (6) arranging alternative care, i.e. babysitting, day-care, etc.; (7) putting child to bed at night, attending to child in the middle of the night, waking child in the morning; (8) disciplining, i.e. teaching general manners and toilet training; (9) educating, i.e., religious, cultural, social, etc.; and, (10) teaching elementary skills, i.e., reading, writing and arithmetic.

*Pikula*, at 713–714 (quoting *Garska v. McCoy*, 278 S.E.2d 357, 363 (W.Va.1981).

Because it is not the function of this court to make findings of fact, this matter must be remanded for a determination of which parent was the primary caretaker *at the time the dissolution proceeding was commenced. Pikula*, at 714. The trial court should examine each party's relationship with the children pursuant to the factors set out in *Pikula;* undue emphasis should not be placed on the relationship of respondent's mother with her grandchildren. The grandmother did not apply for custody in this case and she may not be preferred over one of the natural parents in the absence of grave reasons for doing so. *See, e.g., Wallin v. Wallin*, 290 Minn. 261, 187 N.W.2d 627 (1971).

## DECISION

The trial court's decision and judgment is affirmed on the division and valuation of marital property.

The trial court's decision regarding attorneys' fees is reversed and remanded.

The trial court's decision regarding spousal maintenance is reversed and remanded.

The trial court's decision regarding child custody is reversed and remanded for a determination of which parent was the primary parent at the time the dissolution proceeding was commenced. The trial court is instructed to make findings as to the legal custody of the children (sole or joint), their physical custody and residence, and their support. Minn.Stat. § 518.17, subd. 3.

*Affirmed in part, reversed and remanded in part.*

WOZNIAK, Judge (dissenting).

■■■■ I respectfully dissent from the majority decision to remand on child custody, and instead would affirm the trial court's custody determination. I concur with the majority opinion in remanding on spousal maintenance and attorney's fees. It should be noted at the outset that venue in this case was changed from the county of residence of the parties to Mower County to ensure an impartial trial court.

I. We must act within the scope of review. In selecting which parent shall be charged with the care, custody, and control of a child, the trial court is vested with broad discretion. *Weatherly v. Weatherly,* 330 N.W.2d 890, 891 (Minn.1983). Its determination must be affirmed unless it is clearly shown that the trial court abused that discretion. *LaBelle v. LaBelle,* 296 Minn. 173, 175, 207 N.W.2d 291, 292 (1973); *Bryant v. Bryant,* 264 Minn. 509, 512, 119 N.W.2d 714, 717 (1963); *Estby v. Estby,* 371 N.W.2d 647, 649 (Minn.Ct.App.1985). Without a showing of arbitrary action, an appellate court will be slow to interfere with the discretion of the trial court. *Davis v. Davis,* 306 Minn. 536, 538, 235 N.W.2d 836, 838 (1975); *Hansen v. Hansen,* 284 Minn. 1, 5, 169 N.W.2d 12, 14 (1969).

The ultimate and controlling standard in all custody determinations is the "best interests of the child." Minn.Stat. § 518.17, subd. 3 (1984); *Berndt v. Berndt,* 292 N.W.2d 1, 2 (Minn.1980); *Wallin v. Wallin,* 290 Minn. 261, 264, 187 N.W.2d 627, 629 (1971). The rights of the parents must

yield to that principle. *Schultz v. Schultz,* 266 Minn. 205, 208, 123 N.W.2d 118, 121 (1963). The "best interests" of the child is a factual issue. *See Willmore v. Willmore,* 273 Minn. 537, 539, 544, 143 N.W.2d 630, 632–34 (1966). Unless clearly erroneous, a trial court finding concerning the best interests of the child must be upheld. Minn.R.Civ.P. 52.01; *Pikula v. Pikula,* 374 N.W.2d 705, 710 (Minn.1985); *Heard v. Heard,* 353 N.W.2d 157, 161 (Minn.Ct.App. 1984). The reviewing court must view the evidence in the light most favorable to the trial court's findings. *Hansen,* 284 Minn. at 5, 169 N.W.2d at 15; *Rinker v. Rinker,* 358 N.W.2d 165, 167 (Minn.Ct.App.1984).

II. Minn.Stat. § 518.17 (1984) requires the trial court to consider all factors relevant to the best interests of a child.

The majority correctly notes the recent rule established by the Minnesota Supreme Court that, when both parents seek custody of a child "too young" to express a preference for a particular parent and one parent has been the primary caretaker of the child, custody should be awarded to the primary parent absent a showing that the parent is unfit to be the custodian. *Pikula,* at 711–712. A necessary corollary to this rule, recognized by the supreme court in *Pikula,* is that, where neither parent can demonstrate that he or she is the primary caretaker, no presumptive quality arises and the trial court must examine all other factors relevant to the best interests of the child. *Pikula,* at 714. In *Pikula,* the supreme court did not overrule the legislatively-mandated factors of § 518.17, subd. 1.

In enacting § 518.17, the legislature expressed its overriding concern that a child's life remain as stable and uninterrupted as possible in the face of a marriage dissolution. The primary parent doctrine at its core is a recognition of the importance to the child of stability in relationships. Of all the factors in § 518.17, subd. 1, the legislature most directly addressed the importance of stability in the child's relationships in (c), which requires the trial court to consider and evaluate:

The interaction and interrelationship of the child with his parent or parents, his siblings, and any other person who may significantly affect the child's best interests.

Thus, the effect of *Pikula* is to add a presumptive quality in some cases to an already legislatively-mandated factor.

In the present case, the trial court faithfully and explicitly considered and evaluated all nine factors of § 518.17, subd. 1, in determining the custody of Erin, Patrick, and Caitlin. The trial court found that, as to factor (c), there was a "fairly equal balance between the parties." This finding directly concerns the relationships of the children with their parents and is an explicit finding that neither party had clearly demonstrated that he or she *alone* possessed that special "bond formed between a primary parent and a child." *Pikula*, at 711 n. 2. This finding by the trial court is not clearly erroneous. Moreover, there is satisfactory evidence of the fact that child care was "shared by both parents in an entirely equal way." *Pikula*, at 714.

The trial court and both parties recognized the importance of the factor of primary parent as it related to the best interests of the children. Accordingly, during the course of the two-day trial and the supplemental hearing, only a minute portion of the evidence concerned matters other than custody and the best interests of the children. The overwhelming majority of the evidence revolved around the issue of who was the primary parent.

Carol and her witnesses testified that she was the primary parent. She testified that she met the day to day needs of the children. She got the children up in the morning, prepared and served their meals, and maintained the home. She was the children's companion in their play, encouraged their outside interests, and supervised their studies. She testified that she set the rules of the household and guided the children with appropriate discipline.

Duane and his witnesses testified that he was the primary parent. He testified that when Carol worked, he did virtually everything for the one child (Erin) then born. He set aside specific time to play with the children around the farm and to teach them basic skills such as reading. The children participated with him in his exercises and chores around the farm. He testified that starting in 1982 he was doing more than half of the bathing of the children, getting them ready and into bed, and preparing and serving snacks to them on weekends. When Carol was away from home participating in her equestrian and club activities, Duane was responsible for all parenting. He testified that he disciplined the children when necessary in the manner he believed best.

The trial court ordered two custody investigations. They were performed by Betty Young, a Court Services employee for 27 years. She had input from approximately 35 people in preparing her report, and testified that she had observed these children more than any other children upon whom she had done a custody study. She stated in her report that both parents were active parents and both had a warm, affectionate relationship with the children.

The trial judge also conducted a private interview with Erin, Patrick, and Caitlin. In his summary of the interview, the trial judge stated that Erin and Patrick were prepared to accept life with either parent.

From this morass of conflicting evidence, the trial court concluded that, concerning the children's relationships with their parents, the parties were equally balanced. Nothing in the record suggests that the trial court disregarded Carol's parenting role. Viewing the record as a whole and in a light most favorable to the trial court's finding, it cannot be said that this finding of equality is clearly erroneous.

Finding that neither party had clearly demonstrated that he or she was the primary caretaker, the trial court correctly went on to consider and evaluate all other relevant factors to the best interests of the children. *Pikula*, at 714.

The trial court found as to § 518.17, subd. 1(d), (e) and (f):

I feel that the children have a total adjustment to their rural home and their school. They have lived together in a stable home, for over five years. They have become adapted to a very delightful, healthy and educational environment, and have clearly profited from the exposure. Respondent's position appears reasonably secure, and permanence of the family unit seems assured.

The majority does not dispute that the trial court's finding regarding the security of Duane's employment is not clearly erroneous.

The majority also does not dispute as being clearly erroneous the trial court's finding that the "farm" is a very positive environment for the children and to which they are very attached. The trial court awarded the homestead to Duane. The majority does, however, object to the trial court's use of this factor as a basis for awarding custody to Duane. Such an objection is misplaced because in this case Carol specifically recommended in her "trial summation and memorandum" that the homestead be awarded to Duane. A trial court is certainly entitled under § 518.17, subd. 1(d), (e) and (f) to take into consideration a party's intent to remove the children from a stable environment to which they are very attached. This is especially true where the facts of the case indicate that sufficient support or maintenance could be ordered to allow either party to remain in the homestead.

The trial court also found that Carol's future plans were uncertain:

I have considered, also, the uncertainty of petitioner's future plans. As recently as August she intended to move to Wisconsin, where she intended to go to school. By October she apparently changed her mind and made tentative plans to move to Stewartville. However, those plans, as yet, include neither job nor school.

Carol made at least three major changes in her plans for the future during the course of the dissolution. The most recent change was her move to northern Wisconsin to reside with one of her parents. Whether this move was temporary or permanent is unclear. However, this was an abrupt change from her previous plan to purchase a house in Grand Meadow. No court has yet been apprised of her current plans for either more education or employment. The majority does not dispute that the trial court's finding of uncertainty in Carol's future plans is not clearly erroneous.

Once again, however, the majority objects to the trial court's use of this factor as a basis for awarding custody to Duane. This objection is misplaced. A trial court is required to consider *all* factors relevant to the best interests of a child. Understandably, any party going through a marriage dissolution will be somewhat uncertain in his or her plans for the future. At some point, however, a great amount of uncertainty, combined with a lack of resolve to formulate plans and begin working on them, can be said to be detrimental to the best interests of a child. At such point, a trial court is required to consider the uncertainty factor in awarding custody. Whether such point is reached in a given case is a matter best left to the discretion of the trial court and, as with other factors concerning the best interests of a child, should not be disturbed on appeal unless clearly erroneous. As the record indicates, the trial court was not clearly erroneous in considering Carol's uncertain future plans.

Finally, the majority fails to mention that the trial court's decision to award custody of Erin, Patrick and Caitlin to Duane was the exact conclusion reached by the expert Betty Young in her custody evaluation.

Viewing all this evidence in a light most favorable to the trial court's findings, the finding that the best interests of the children would be served by custody with Duane is not clearly erroneous. The trial court's award of custody to Duane was not an abuse of discretion or arbitrary, and should be affirmed.

The result would not be different even if the trial court is considered to have made

no primary parent finding. The duty of an appellate court is to view the evidence in a light most favorable to the trial court and sustain a "best interests" finding unless it is clearly erroneous. A trial court's "best interests" finding must be upheld if the findings as a whole reflect that the trial court has taken the relevant factors into consideration in reaching its decision. *Rosenfeld v. Rosenfeld,* 311 Minn. 76, 83, 249 N.W.2d 168, 171–72 (1976). This is demonstrated by the findings here, and those findings are adequately sustained by competent evidence.

Realizing, however, that the majority has decided to remand this case to the trial court on the custody issue, several additional comments are necessary. First, the trial court should take note of the fact that Carol now permanently resides outside this jurisdiction. Therefore, the trial court must consider the two major concepts announced in *Auge v. Auge,* 334 N.W.2d 393 (Minn.1983); that is, removal of the children is prohibited if it contradicts the best interests of the child or if the purpose of the move is to interfere with the visitation rights granted to the noncustodial parent. *Id.* at 397, 399, 400. Second, the trial court must again consider Carol's future plans concerning education and/or employment and how they may have changed since her abrupt move to Wisconsin. Third, the trial court must also evaluate the suitability of her new home for the custody of the children. Finally, the trial court should feel free to reaffirm its earlier finding that neither party clearly demonstrated that he or she was the primary parent.