358 N.W.2d 86 (1984)
M.M. and C.M., Appellants,
v.
R.R.M., Petitioner, K.L.H., formerly K.L.M., Respondents.
No. C5-84-472.
Court of Appeals of Minnesota.
November 13, 1984.
*87 Mary Kay Klein, Smith, Carpenter & Benshoof, Bemidji, for appellants.
Stephen R. Young, Michael R. Ruffenach, Treuer & Ruffenach, Bemidji, for respondents.
Heard, considered and decided by PARKER, P.J., and FORSBERG and RANDALL, JJ.

OPINION
PARKER, Judge.
M.M. and C.M. appeal from an order denying their post-trial motions to allow the intervention of a guardian ad litem and to order home studies in a custody suit between their parents. Their mother appeals from the same order, which denied her motions to appoint a guardian ad litem for the children, to dismiss their father's attorney because of a conflict of interest, and to grant a new trial. We reverse and remand for another hearing since we find the children were not adequately represented at trial.

FACTS
The father (R.R.M.) and the mother (K.L.H.) were divorced in 1974. She was given custody of their four children. The two sons are no longer minors; the daughters, M.M. and C.M., are about 16 and 14 years old, respectively.
In 1975 the mother married R.H. She knew at the time of the marriage that he had sexually abused a daughter born during his first marriage and had received about three months of inpatient treatment at the St. Cloud Veteran's Hospital and about six months of outpatient treatment at the St. Cloud Mental Health Center as a result.
After the marriage, R.H. sexually abused M.M. over a period of years. She first reported the abuse to her mother in June 1978, when she was about ten years old. R.H. then began treatment through an out-patient program at the Upper Mississippi Mental Health Center in Bemidji, which continued through January 1981.
At that time M.M. reported another incident of sexual abuse of a more serious nature, for which R.H. was charged with second-degree intrafamilial sexual abuse. Prosecution of the complaint was deferred indefinitely on the condition that he complete an intensive program for offenders at the Family Renewal Center (FRC) at Fairview Hospital in Minneapolis. This program lasted from April 1981 through December 1982 and involved both individual and family therapy. During this therapy they learned that R.H.'s brother had attempted to sexually abuse K.L.H.'s two sons.
*88 Before R.H. was returned to the home in December 1982, M.M. began demonstrating signs of emotional distress. She attempted suicide in the spring of 1982 by overdosing on aspirin and again in the summer of 1982 by swallowing nail polish remover. She became severely truant and has had two truancy petitions brought against her in Beltrami County Juvenile Court. She has told her mother that she has attempted to become pregnant so that she can marry and leave their home. In early October 1983 when she was 15 years old she was placed temporarily in the Northwest Juvenile Training Center. She ran from the center to spend a weekend with her boyfriend in local motels. The parties agreed to transfer her custody to Beltrami County Social Services in order to place her in a group home in Willmar. She remained there at the time of trial.
In June 1982 the mother had asked the father to take custody of M.M. because she felt M.M. needed more discipline. She had not told the father about the sexual abuse or the suicide attempts and did not do so at this time, because she was afraid that he would move for a change of custody. She testified that therapists advised her that the decision to tell others should be M.M.'s. The father allowed M.M. to stay with him until October 1982, when he asked her to leave because of disciplinary problems. He did not find out about the sexual abuse until April 1983, when M.M. told him about it after he attended a truancy hearing with her. She also told him she hated and was afraid of R.H. The father then brought his motion to change custody of the girls.
A psychologist testified that both girls were significantly depressed, both of them are afraid of R.H., and the environment in their mother's home would impair their emotional development. He also testified that R.H. was in a high risk category as a repeat offender. Another psychologist testified that the girls were not significantly depressed. R.H.'s social worker from Beltrami County testified that in his opinion the home was safe for the girls.
The father testified that he was in the process of obtaining a divorce from his second wife and was living near Virginia, Minnesota, with his new fiance. He is a recovering alcoholic who has been sober for 13 years. He said he had obtained counseling at the Range Mental Health Center on understanding sexual abuse and its victims. He contacted the children infrequently, on their birthdays and at Christmas, before this proceeding began. He became more involved with M.M.'s problems before trial and was in contact with her probation officer.
The mother testified that her family has worked hard to resolve their problems and that M.M. has become much more comfortable around R.H. since no further incidents have taken place. She said that she would not hesitate to report any future incidents of abuse.
C.M. testified in chambers that she wishes to remain with her mother and stepfather. M.M. did not testify but submitted a post-trial affidavit stating that she would rather live with her mother and stepfather.
The trial court found that there was a present danger to the physical and emotional health of both girls, that there was a substantial risk that future abuse would not be reported, and that the girls' preferences could be given only limited weight. He ordered that their custody be transferred to their father subject to reasonable visitation with their mother.

ISSUES
1. Did the trial court err in failing to appoint a guardian ad litem and order home studies before trial?
2. Did the trial court err in refusing to dismiss counsel for respondent because of a conflict of interest?

DISCUSSION

I
Appellants contend the trial court erred in failing to appoint a guardian ad litem and order home studies both (1) on its own motion and (2) in response to their post-trial *89 motions. The trial court found that their interests were adequately represented and that the motions were not timely.
Appointment of a guardian ad litem is authorized by Minn.Stat. § 518.165 (1982), which gives the court discretionary power to appoint an independent guardian to represent the interests of the child. Intervention is allowed pursuant to Minn.R.Civ.P. 24.01, which provides:
Upon timely application anyone shall be permitted to intervene in an action when the applicant claims an interest relating to the property or transaction which is the subject of the action and he is so situated that the disposition of the action may as a practical matter impair or impede his ability to protect that interest, unless the applicant's interest is adequately represented by existing parties.
Minn.Stat. § 518.156, subd. 2 (1982), also allows intervention in a custody proceeding.
Although appointment of a guardian ad litem is discretionary, the Minnesota Supreme Court has strongly encouraged it in other contexts. In Tischendorf v. Tischendorf, 321 N.W.2d 405, 409 (Minn.1982), the court said regarding a visitation dispute:
The trial court * * * concluded that the child's interests * * * were adequately represented and therefore intervention by a guardian was not warranted. While we hold that [the] motion was properly denied [because it was not timely], our disposition of this case may prompt the trial court, on remand, to select an independent guardian pursuant to section 518.165 to assure that [the child's] interests are adequately represented.
Similarly, in Application of Saxton, 309 N.W.2d 298 (Minn.1981), cert. denied sub. nom. Saxton v. Dennis, 455 U.S. 1034, 102 S.Ct. 1737, 72 L.Ed.2d 152, the court encouraged appointment of a guardian in considering a petition to change a child's surname.
Custody is a more significant issue than those addressed in Tischendorf and Saxton, particularly when the children's physical and emotional safety is in question. In this situation the interests of the children are undeniably different from those of their parents, and we find that their interests were not adequately represented at trial. Their testimony was minimal, and their reasons for wanting to live with a man who says he may possibly abuse them in the future remain incomprehensible. No home studies were performed, even though the father was living with a complete stranger to them, because the parents agreed the studies were not necessary. The hostility of the father and mother toward each other was manifest; each contended strongly that custody was appropriately given only to him or her.
The trial court was thus presented with a Hobson's choice  in our view the only option available on the record before the court was to transfer the girls' custody to their father. However, the trial court's choices should not be so limited considering the importance of the decision. We therefore hold that the court erred in failing to appoint an independent guardian and to order home studies on its own motion.
Again, we do not say that the trial court abused its discretion on the record before it. That record, however, was woefully incomplete. The missing element was vigorous, independent representation of the children by counsel acting in their interest and their interest only. We note here that the girls' counsel on appeal was patently allied with their mother, and we do not consider that the type of representation required. We therefore remand to the trial court with directions to (1) appoint an independent guardian ad litem for the girls from the district court panel, pursuant to Minn.Stat. 518.165, without recommendation from either of the parents; (2) to order a study of each home considered by the appropriate county agency; and (3) to hear anew the question of custody on the basis of the guardian's recommendation and the information derived from the home studies. *90 Presumably the court will then have before it a full range of custody options, including, with appropriate juvenile court involvement, if necessary, the possibility of foster care.
Until then, the custody of the girls shall remain with their father under the court's prior order. Because of our disposition of this case we do not reach the question whether the court abused its discretion in transferring their custody to him.

II
The mother also contends the trial court erred in denying her pretrial motion to dismiss Stephen Young, the father's attorney, because of a possible conflict of interest. Young's law firm acted as the Beltrami County Attorney when R.H. was charged with intrafamilial sexual abuse. His office also negotiated the disposition of that charge. The mother argues that because Young had access to "significant confidential" information concerning her family he should have been dismissed.
There is no evidence in the record that Young obtained any confidential material because of his position or that the mother was prejudiced in any way by Young's present representation of the father. See Moose v. Vesey, 225 Minn. 64, 68, 29 N.W.2d 649, 652 (1947). We find no abuse of discretion in the trial court's refusal to dismiss Young as the father's counsel.

DECISION
The trial court should have appointed a guardian ad litem for the appellants and ordered home studies on its own motion because the children's interests were not adequately represented at trial. The court did not err in refusing to dismiss the father's counsel because of a possible conflict of interest.
Reversed and remanded for another custody hearing with directions to appoint a guardian ad litem and order home studies.