In re the Marriage of Diane Marie SPELTZ, petitioner, Appellant,

v.

Philip Peter SPELTZ, Respondent.

No. Cl–85–1693.

Court of Appeals of Minnesota.

April 29, 1986.

Review Denied June 30, 1986.

Ruth Ann McCaleb, Walters & McCaleb, Rochester, for appellant.

Richard W. Towey, Towey & DeYoung, St. Charles, for respondent.

Heard, considered and decided by PARKER, P.J., and LANSING and CRIPPEN, JJ.

## OPINION

PARKER, Judge.

This appeal is from a judgment and decree of dissolution awarding custody of the parties' two children to respondent Philip Speltz.[1] Appellant Diane Speltz contends the trial court erred in failing to consider her role as the primary caretaker. Respondent filed a notice of review, contesting the trial court's award of $4,000 in temporary attorney's fees to appellant. We reverse the trial court's award of custody and affirm its award of temporary attorney's fees.

## FACTS

The parties married in 1977 and separated in September 1984. They have two children, Joseph Jay Speltz, born in March 1979, and Laura Elizabeth Speltz, born in May 1981. Respondent and his older brother, Leo Speltz, inherited the Speltz family dairy farm in Winona County and operate it as a partnership. Appellant was a mother and housewife during the marriage and did not work outside the home.

The parties and their children lived in the original farmhouse located on the Speltz farm. Leo Speltz, his wife Mary, and their four children live in a home 50 yards away.

The parties began having problems during the summer of 1984; appellant took the children, left the farm, and moved to Rochester. She filed a domestic abuse petition and initially stayed in a women's shelter.[2] Appellant and the children thereafter moved into a house owned by her sister in Rochester. The older child, Jay, was enrolled in kindergarten in Rochester. In February 1985 appellant began working as a clerk typist at the Mayo Clinic and placed the children in day care.

Appellant filed a petition for dissolution in October 1984. Both parties sought permanent custody. It was stipulated that

---

1. The issues of child custody and property distribution were bifurcated. A determination on the property division was reserved for later consideration.

2. Appellant's allegations of abuse are unsubstantiated by the record and are not important to the issues here.

appellant would receive temporary custody, and a visitation schedule was set up. Trial on the issue of permanent custody was held in May 1985. Appellant proposed that she receive physical custody of the children during the school year and that the children spend summers with respondent on the farm. Respondent proposed that he receive sole physical custody with liberal visitation privileges given to appellant.

The record contains reports from several experts. The parties had been interviewed and tested by licensed psychologist Harlan Wickre. In a report dated January 7, 1985, Dr. Wickre expressed concerns about both parties: he noted respondent appears to have minimized and denied his involvement in the "extreme disruption that has gone on in the family," and stated that appellant "does not show a strong commitment to her children's maintaining a relationship with their father" and that "there are subtle attempts to alienate them from him." Nevertheless, Dr. Wickre stressed that each party demonstrated good parenting techniques and concluded:

I see both Diane and Philip as having adequate parenting capabilities. Their extremely strained relationship with each other will make any joint cooperative parenting agreements difficult. * * * Psychologically, I see no reason why either parent should not have significant access to the children, no matter which parent gains physical custody.

A custody investigation was prepared by Olmsted County social workers Kathy Berger and Tom Hanson, who also testified at trial. Based on interviews with the parties and with references named by them, observations of the parties with their children in their homes, and the report submitted by Dr. Wickre, Hanson and Berger concluded in their report:

We are recommending the children be placed under full custody of their father. We are very much concerned about the lack of positive communication between these parents as it is well known how this can adversely affect the children of divorce. Unfortunately, we do not feel a joint custodial arrangement is workable.

Rita Strickland, the appointed guardian ad litem, also submitted a report and testified at trial. In her report, she recommended "that primary custody be with Philip Speltz. * * * I feel the environment at the family farm is definitely in the best interests of the children." Strickland testified at trial that the parties' lack of communication precluded a joint custody arrangement.

In addition to these reports and the testimony of these experts at trial, the trial court heard extensive testimony from the parties, respondent's brother and sister-in-law, and the children's teachers. Based on this evidence, the trial court found:

8. That both petitioner [Diane Speltz] and respondent [Philip Speltz] possess adequate parenting skills.

\* \* \* \* \* \*

12. That the respondent, Philip Speltz, is more supportive of the children's relationship with their mother than is the petitioner, Diane Speltz, supportive of the children's relationship with their father.

13. That the petitioner is not an unfit mother and should be given "significant access" to the children.

14. That it would be in the best interest of the children to spend the majority of their time at the farm home of the respondent subject to liberal and significant visitation rights of the petitioner.

The trial court awarded permanent physical custody of the two children to respondent and granted appellant visitation during the school year and for the first two weeks in June, the last two weeks in August, and the two weeks of her vacation.

## ISSUES

1. Did the trial court abuse its discretion by improperly applying the law when it failed to award custody of the children to appellant, the primary caretaker?

2. Did the trial court abuse its discretion in awarding appellant temporary attorney's fees of $4,000?

## DISCUSSION

### I

■ Appellate review of custody determinations is limited to whether the trial court abused its discretion by making findings unsupported by the evidence or by improperly applying the law. *Pikula v. Pikula*, 374 N.W.2d 705, 710 (Minn.1985) (citing *Weatherly v. Weatherly*, 330 N.W.2d 890 (Minn.1983), and *Berndt v. Berndt*, 292 N.W.2d 1 (Minn.1980)).

■ In this case, we might question the appropriateness of the trial court's finding # 9, emphasizing the "safe, stable and familiar [farm] environment with familiar substitute care [by respondent's brother and sister-in-law]." An award of property should not be determinative of custody, nor should an extended family be preferred over a natural parent. *See Kennedy v. Kennedy*, 376 N.W.2d 702, 706–07 (Minn.Ct.App.1985). Nevertheless, the trial court's findings are not clearly erroneous and are supported by the recommendations and testimony of two social workers and the guardian ad litem.

■ This case was tried prior to the supreme court's decision in *Pikula*, which held that

> when both parents seek custody of a child too young to express a preference, and one parent has been the primary caretaker of the child, custody should be awarded to the primary caretaker absent a showing that that parent is unfit to be the custodian.

*Pikula*, 374 N.W.2d at 713. This rule leaves little room for discretion when the children are young and when the evidence is clear that one parent is the primary caretaker.

*Pikula* dealt with findings that were silent as to parenting care. *See id.* at 709 (trial court's amended findings stress only stability and desirability of father's extended family as opposed to uncertainty of mother's environment). The matter was therefore remanded to the trial court for a determination of which, if either, party was the primary caretaker at the time the dissolution proceeding began. *Id.* at 714.

Here, the trial court found that both parties possess adequate parenting skills and that appellant is not an unfit mother. The evidence overwhelmingly establishes that appellant is the primary caretaker, and, in view of the foregoing findings, we conclude that reversal and a direct award of custody to appellant is mandated. *Compare Kennedy*, 376 N.W.2d 702 (matter remanded for determination of which parent is primary caretaker where record indicated father/respondent had been involved in some primary care activities); *Sefkow v. Sefkow*, 378 N.W.2d 72, 77 (Minn.Ct.App. 1985), *pet. for rev. denied*, (Minn. Jan. 17, 1986) (remand appropriate to allow trial court and parties opportunity to address *Pikula* standards).

Respondent recognizes that the trial court failed to apply the primary caretaker doctrine but nevertheless contends its decision should be upheld. He first argues that the primary caretaker doctrine does not apply because the "ages and maturity levels of the two Speltz children [who were 6 and 4 at the time this proceeding was commenced] distinguish them from the minor children in *Pikula* [who were 4 and 2]." We conclude, however, that the Speltz children were still too young to express a preference.

Respondent next argues that even if *Pikula* applies, "there is strong evidence that the Respondent Philip Speltz participated significantly in the primary care of Jay and Laura." The indicia of primary parenthood set forth in *Pikula*, however, make it "plain that a parent who has performed the traditional role of homemaker will ordinarily be able to establish primary parent status." *Id.* at 714. Appellant bathed the children, took responsibility for their education, performed the housework, and prepared all of the family's meals. Farming took up most of respondent's time. He left

early in the morning and often would come in only for meals. He was not available after school and pre-bedtime, from 4:30 p.m. until 8 p.m., because of his milking duties. Respondent has been an active father, but his activities and relationship with the children were supplemental and collateral to appellant's primary care.

Respondent finally argues that even if appellant is found to be the primary caretaker, she should not be given custody because the evidence indicates that she has attempted to undermine his relationship with the children. *Pikula* emphasizes that "[o]nce the preference does arise, * * * the primary parent should be given custody unless it is shown that the child's physical or emotional health is likely to be endangered or impaired by being placed in the primary parent's custody." *Id.* However, the trial court specifically found that appellant is not an unfit mother, and the evidence fails to support an inference that the children's emotional health would be impaired by being placed in appellant's custody. To the contrary, her proposed custody arrangement[3] is a strong indication that she will not attempt to undermine the children's relationship with their father. It is therefore ordered that custody of the children shall be granted to appellant, subject to reasonable visitation during the school year and subject to visitation with respondent during summer vacation except the first and last weeks thereof.

## II

■ Respondent filed a notice of review contesting the trial court's award of temporary attorney's fees. An award of attorney's fees rests almost entirely within the discretion of the trial court in dissolution cases. The award will not be disturbed absent a clear abuse of discretion. *Kirby v. Kirby,* 348 N.W.2d 392, 394 (Minn.Ct. App.1984). After considering the financial resources of both parties, the court may "require one party to pay a reasonable amount necessary to enable the other spouse to carry on or to contest the proceeding." Minn.Stat. § 518.14 (1984).

The trial court found that "respondent has greater income and resources than petitioner and it is fair and equitable that he shall pay to petitioner the sum of $4,000.00 toward her temporary attorney's fees and expenses incurred in this matter." Respondent contends this was an abuse of discretion because both parties are employed full-time and have comparable incomes. He also insists that because the property issues have not yet been addressed, any award of fees should be reserved until the parties' property has been inventoried and divided.

■ The award of temporary attorney's fees is well within the trial court's discretion and must be upheld. Appellant's ability to proceed and assert her rights might be substantially prejudiced if her ability to pay attorney's fees had to await final disposition of the parties' property. Moreover, the award is temporary and can be readjusted if the trial court later determines the award to have been inappropriate.

## DECISION

The trial court's decision on custody is reversed, and appellant is granted custody of the children, subject to reasonable visitation during the school year and subject to visitation with respondent during summer vacation except the first and last weeks thereof.

The trial court's award of temporary attorney's fees was within its discretion.

Affirmed in part and reversed in part.

---

3. Appellant proposed the children remain with her during the school year and spend the summers with respondent on the farm.