**In re the Marriage of Carole Mary KENNEDY, n.k.a. Carole Mary Lindstrom, Petitioner, Appellant,**

v.

**Duane Allen KENNEDY, Respondent.**

**No. CX–86–2030.**

Court of Appeals of Minnesota.

April 14, 1987.

Ellen Dresselhuis, Minneapolis, for appellant.

M. John Steward, Rochester, for respondent.

Considered and decided by CRIPPEN, P.J., and WOZNIAK and STONE *, JJ., with oral argument waived.

## OPINION

CRIPPEN, Judge.

This appeal deals with the sufficiency of evidence to support trial court findings that neither parent was the primary caretaker of three children. We sustain the finding

---

* Acting as judge of the Court of Appeals by appointment pursuant to Minn. Const. art. 6, § 2.

and affirm placement of physical custody of the children with their father. We modify the trial court's judgment to provide for joint legal custody of all four children of the parties and to make final the trial court's placement of custody of a fourth child with his mother.

## FACTS

The parties were married in 1970. They have four children, daughters born in 1972 and 1980, and sons born in 1978 and 1984.

Since 1976, respondent Duane Kennedy has practiced law. Appellant Carole Lindstrom, formerly Carole Kennedy, has a college degree in anthropology. She was actively employed until 1977, when the oldest child of the marriage was 5 years old and the parties were expecting their second child. Since then, she has done typing at home for a court reporter for two and one-half years, and she was employed for six months in 1983 as a temporary secretary.

During the last five years of their marriage, the couple lived in a rural home near Grand Meadow, Minnesota. Respondent was employed in Rochester. He and the three older children continue to live in the farm home. Appellant, with the youngest child of the parties, resides with her widowed father at Ashland, Wisconsin.

### Case history

In a November 1984 dissolution judgment, the trial court split custody of the children. The three older children were placed in the sole custody of respondent, their father. The youngest child, now nearly age 3, was placed in the temporary custody of appellant, his mother, pending a further social study and hearing.

In November 1985, this court reviewed the 1984 custody decision, based on standards announced by the Minnesota Supreme Court in *Pikula v. Pikula*, 374 N.W.2d 705 (Minn.1985) (initially filed in September 1985). *Kennedy v. Kennedy*, 376 N.W.2d 702 (Minn.Ct.App.1985). We remanded the case for the trial court to determine which party was the primary parent in January 1984, when the proceed-

ing was commenced. This appeal is from the trial court's decision on remand.

### 1984 trial

At a trial in August 1984, the trial court heard 14 witnesses on the child custody issue, including a veteran court services investigator who had contacted over 30 people in preparing a written report. The trial judge interviewed the three older children. The evidence indicated that both parents cared deeply for their children and enjoyed good relationships with them. The children were healthy and well-adjusted.

The court services officer recommended placing custody of the three older children with their father, based partly on interviews with the children. The officer and the other witnesses offered conflicting evidence on the involvement of each parent with the children, the time appellant was away from the home in social activities, and the demonstrations by each parent of unselfish concern for the daily needs of the children. Between 1977 and 1982, appellant had responsibility for child care during more hours than respondent, but she acknowledged that beginning in 1982, marital difficulties arose and respondent became increasingly more involved. Respondent's evidence showed him heavily involved in child care and effective in dealings with the children throughout the couple's parenting years.

### Trial court findings

In 1986, on remand, the trial court found appellant was the primary caretaker of the youngest child, who had lived with her separately since he was an infant, but that "neither parent was the primary caretaker" of the other three children. This additional finding was stated:

Responsibility for the performance of child care was shared by both parents, in an essentially equal way. From time to time, the parents assumed different duties, but the quantum of their care for the children was such that neither can be said to have become the primary parent.

In an attached memorandum, the trial court stated that it was confronted by a great deal of conflicting evidence on contributions of each parent, that the court believed it was appropriate to evaluate child care from the vantage point of the children, that visits with the children were particularly helpful to the court, and that the court believed, under *Pikula*, that it was to consider care both in terms of its quantity and quality.

In addition, the trial court found:

During the course of this marriage [appellant's] professional and social pursuits took her from the home so that there was more personal contact between [respondent] and his children in their care and less by [appellant] than would normally be the case, leading me to conclude that [appellant] was not a traditional homemaker.

For the record, at the hearing on February 28, 1986, the trial court likewise commented:

There was a great deal more personal contact between the father and the children, and a great deal more absence on the part of the mother than is normally the case when you think of a breadwinner that goes to work at seven and gets home at six, and the mother is home all day. So this was a * * * situation which I took into account.

\* \* \* \* \* \*

[P]rofessional and vocational and social pursuits of Mrs. Kennedy [took] her from the home on a good many days and evenings and weekends, during which time the children were frequently and extensively cared for either by their father or in the home of other relatives * * *.

Finally, noting that application of the *Pikula* standard was limited to younger children, the trial court found on remand that the two older children (born in 1972 and 1978) are old enough to express a preference about custody.

The trial court on remand made its findings supplementary to its 1984 findings, which preceded the *Pikula* decision and dwelled on statutory custody standards.[1] Consistent with its 1986 primary care findings, the court found in 1984 that "there is a fairly equal balance between the parties" as to interaction and interrelationship with the children. *See* Minn.Stat. § 518.17, subd. 1(c) (1986). The court found the parties have an equal capacity and disposition to meet the children's needs. *See id.*, subd. 1(h).

The court found in 1984 that the three older children were adapted to a stable home and healthy school environment in Grand Meadow, and that the permanence of this environment could be assured in a custodial placement with their father. This finding related to standards found in subsections (d), (e) and (f) of the statute.[2] The

1. The trial court is required to consider the best interests of the child. *See* Minn.Stat. § 518.17, subd. 3 (1986). Subdivision 1 of section 518.17 provides:

"The best interests of the child" means all relevant factors to be considered and evaluated by the court including:

(a) The wishes of the child's parent or parents as to custody;

(b) The reasonable preference of the child, if the court deems the child to be of sufficient age to express preference;

(c) The interaction and interrelationship of the child with a parent or parents, siblings, and any other person who may significantly affect the child's best interests;

(d) The child's adjustment to home, school, and community;

(e) The length of time the child has lived in a stable, satisfactory environment and the desirability of maintaining continuity;

(f) The permanence, as a family unit, of the existing or proposed custodial home;

(g) The mental and physical health of all individuals involved;

(h) The capacity and disposition of the parties to give the child love, affection, and guidance, and to continue educating and raising the child in the child's culture and religion or creed, if any; and

(i) The child's cultural background.

The court shall not consider conduct of a proposed custodian that does not affect the custodian's relationship to the child.

2. As we observed in 1985, findings on environment cut two ways. Together with the standard on parent interaction (subsection (c)), they constitute the "continuity" standards given special priority in *Pikula*. *Pikula*, 374 N.W.2d at 711 n. 1. On the other hand, they relate in part to benefits one parent may contribute solely because of his or her economic advantage. *See*

court noted in 1984 that it "considered" the uncertainty of appellant's future plans.[3] Finally, the court expressly considered present and future bonding between the children in reaching its custody decision.

### 1986 conclusions

On January 27, 1986, the trial court issued an order for judgment based on its original and supplementary findings. The court provided for joint legal custody of all four children, placed physical custody of the three older children with respondent, and placed physical custody of the youngest child with appellant.

Respondent's motion for amended findings and conclusions was heard on February 28. Because appellant's counsel did not appear at the motion hearing, the hearing occurred without an exchange of conflicting views of the parties on matters addressed in the motion. On March 7, the trial court issued a modified order for judgment granting respondent sole legal custody of the three older children, and providing that the custody placement of the youngest child with appellant was "temporary," with the issue of permanent custody for this child "reserved by the court for further proceedings."

The appeal is brought from an order in November denying appellant's motion for entry of the court's amended judgment.[4] Appellant contends the trial court's findings and conclusions are not supported by the evidence, and that appellant was a traditional homemaker and the primary parent of the children.

### ISSUES

1. Were the evidence and trial court findings sufficient to sustain the trial court's placement of custody of three children with respondent?

2. Do the evidence and findings support the court's denial of joint legal custody?

---

*Kennedy,* 376 N.W.2d at 707. Here respondent has the advantage of an award of the family homestead. When remanding the case, we instructed the trial court to focus on personal interaction of the children and parents. In its 1986 memorandum the trial court observed that it does not base its custody findings on "things" the father could contribute to the children, but that it thought it "worth noting" that there would be trauma for the children if they lost what their father provided for them. In this regard, the trial court referred to the *Pikula* opinion. *Pikula,* 374 N.W.2d at 714 (the supreme court acts on its "understanding of the traumatic impact on children of separation from the primary caretaker parent").

3. We warned in 1985 that this consideration, together with reliance on the security of respondent's situation, risked discrimination against a traditional homemaker. *Kennedy,* 376 N.W.2d at 707. In its 1986 memorandum, the trial court stated it did not place "any special emphasis" on the uncertainty of appellant's future plans, noting that "it was a factor, but not a compelling or conclusive one."

4. Appellant's motion was denied based on the trial court's observation that the amended judgment was entered on March 7, 1986. Because of this observation, respondent contends this appeal is not timely.
Based upon an examination of the file, we note that nothing was done by the court administrator to make a showing of entry of judgment on the face of the March 7 order for judgment or elsewhere in the record.
Entry of judgment is to occur "forthwith" upon issuance of the order. Minn.R.Civ.P. 58.01. The judgment is to be "entered and signed by the clerk in the judgment roll." *Id. See* Minn. Stat. § 548.08 (1986). The findings and conclusions may constitute the court's judgment "[w]hen entered." Minn.Stat. § 518.145 (1986). Although entry can transform an order into a judgment, without preparation of a separate judgment document, we strongly discourage entry being attempted without indications on the face of the order. We note that in 1984 the court administrator filed in the record a helpful, short document certifying the trial court's findings and conclusions as the court's judgment. Appellant received from the court administrator a copy of the March 7 court order which bore no evidence it constituted a judgment. An accompanying notice indicates a judgment "and Findings of Fact and Conclusions of Law" "was" entered, but we conclude this notice did not reasonably inform appellant that she could not rely on the record for an indication of entry. Appellant's subsequent requests for an entry on the record were rejected by the court administrator without sufficient explanation.
Under the circumstances, we view the November order to be appealable because it determined the action and ended the possibility for obtaining a properly entered appealable order. Minn.R.Civ.App.P. 103.03(e). The scope of review extends to the conclusions reached by the court on March 7. *Id.* 103.04.

3. Did the trial court abuse its discretion in reserving the right to alter its placement of custody of the youngest child with appellant?

## ANALYSIS

### 1. *Custody with respondent*

Appellate review of a custody determination is "limited to whether the trial court abused its discretion by making findings unsupported by the evidence or by improperly applying the law." *Pikula,* 374 N.W.2d at 710.

A determination of child custody must be based on the best interests of the child, requiring consideration of "all relevant factors," including those enumerated by statute. Minn.Stat. § 518.17, subds. 1 and 3 (1986). The *Pikula* court established the rule that:

> [W]hen both parents seek custody of a child too young to express a preference, and one parent has been the primary caretaker of the child, custody should be awarded to the primary caretaker absent a showing that that parent is unfit to be the custodian.

*Pikula,* 374 N.W.2d at 712.

"[O]rdinarily," the *Pikula* court noted, "a parent who has performed the traditional role of homemaker" will be able to establish primary parent status. *Id.* at 714. On the other hand, one who works outside the home may be a primary parent. *Id.*

The *Pikula* rule applies only where "one parent has been the primary caretaker." *Id.* at 712, 713. The supreme court explained:

> When the facts demonstrate that responsibility for and performance of child care was shared by both parents in an entirely equal way, then no preference arises * *.

*Id.* at 713–14. *See Regenscheid v. Regenscheid,* 395 N.W.2d 375, 379 (Minn.Ct.App. 1986), *pet. for rev. denied,* (Minn. Dec. 23, 1986) (affirming disuse of primary parent preference where trial court found mother provided for more physical needs of children but father provided for more emotional and intellectual needs); *Ryan v. Ryan,* 393 N.W.2d 511, 514–15 (Minn.Ct.App.1986)

(affirming disuse of preference where father had much contact with child but trial court found better quality time spent by the mother with the child); *Jorschumb v. Jorschumb,* 390 N.W.2d 806, 811–12 (Minn. Ct.App.1986), *pet. for rev. denied,* (Minn. Aug. 27, 1986), (affirming disuse of preference based on finding each parent contributed differently but equally to care for their child). *See also Hemingsen v. Hemingsen,* 393 N.W.2d 414, 416 (Minn.Ct.App. 1986), *pet. for rev. denied,* (Minn. Nov. 17, 1986); *Pekarek v. Pekarek,* 384 N.W.2d 493, 497 (Minn.Ct.App.1986).

Here the trial court found that caretaking was shared "in an essentially equal way," and that neither parent was the primary parent. In addition, the court found that the circumstances here were not those normally expected for one working parent and a traditional homemaker; the court found the father a great deal more and the mother a great deal less in contact with the children than might normally be expected where only the father worked full-time. Based on these findings, the court did not apply the *Pikula* preference.

■ Trial court findings of fact will not be set aside unless they are clearly erroneous. Minn.R.Civ.P. 52.01. Findings based on conflicting evidence will be affirmed unless they are manifestly and palpably contrary to the evidence as a whole. *Kucera v. Kucera,* 275 Minn. 252, 254–55, 146 N.W.2d 181, 183 (1966). *See Jorschumb,* 390 N.W.2d at 812 (affirming finding of equal caretaking where father argued, and dissenting judge agreed, that overwhelming evidence showed the father was the child's primary parent); *cf. Gerardy v. Gerardy,* 391 N.W.2d 915, 918 (Minn.Ct. App.1986), *pet. for rev. denied,* (Minn. Oct. 17, 1986) (reversing decision for joint physical custody where the trial court and both parties indicated the child's mother carried out most nurturing responsibilities). We must view the evidence in the light most favorable to the court's findings. *Rinker v. Rinker,* 358 N.W.2d 165, 167 (Minn.Ct. App.1984).

■ Here there is sufficient evidence to support the trial court's findings that respondent, while working outside the home, had unusual involvement in child care, including care in the home, medical care, and recreation. The court heard testimony that respondent provided more than half of evening child care. Appellant acknowledged that respondent became progressively more involved in child care during the two years before the couple separated. While appellant was active in child care, some witnesses stated she was also active outside the home and often depended on others, including respondent, to care for the children. Examining the whole record in a light favorable to the trial court's findings, the court did not clearly err in finding that neither parent was the *Pikula* primary parent.

■ There is also evidence supporting the finding of the trial court that two of the children were old enough to express a preference on child care, so that the primary parent preference was inapplicable, at least as to those children. *See Pikula,* 374 N.W.2d at 712–13.

■ When the primary parent preference is inappropriate to the case, the trial court must look to other indicia of the children's best interests. *Id.* at 714. Here the trial court addressed the section 518.17 standards in its 1984 findings. While the court found an "equal balance" between the parents on several standards, the court found that the children would be hurt by a change of their environment, and that respondent could assure them of continuity of care. These findings are supported by competent evidence.

■ We warned in 1985 that the trial court must not consider continuity of care solely in terms of respondent's economic opportunities to continue caring for the children in their former home. *Kennedy,* 376 N.W.2d at 706–07. On remand, the trial court has addressed personal interaction of each parent with the children, denying that it bases its custodial care preference on matters of economic ability. The record adequately supports the court's preference for the father's custodial care,

based on the quantity and quality of his interaction with the children.

■ We note our misgivings prompted by the trial court's decision to split custody of the four children. That choice of action is always "unfortunate." *Schultz v. Schultz,* 266 Minn. 205, 208, 123 N.W.2d 118, 121 (1963). We will carefully scrutinize decisions to split custody. *Rinker,* 358 N.W.2d at 168. On the other hand, the choice to split custody is not conclusively erroneous. *See Borchert v. Borchert,* 279 Minn. 16, 19–20, 154 N.W.2d 902, 905 (1967). Here the trial court expressly considered the bonding among the children and particularly among the three older children. We cannot say the trial court abused its discretion in 1984 or 1986 by choosing not to separate the infant child from his mother, but to find it best for the older children to be together in their father's custody.

Finally, we note that the specificity of the trial court's findings was barely adequate. While the findings here serve to show the trial court properly considered appropriate standards, it would assist the parties and this court if the findings were more highly particularized. *See Rosenfeld v. Rosenfeld,* 311 Minn. 76, 82–83, 249 N.W.2d 168, 171–72 (1976). As we have noted before, findings on the primary parent issue should address particular child care practices that are relevant to the issue, including the factors noted in *Pikula. Hemingsen,* 393 N.W.2d at 417. *See Pikula,* 374 N.W.2d at 713.

### 2. *Joint legal custody*

■ In the form of conclusions drafted by the trial court, dated in January 1986, the court acted on its findings about capable and sharing parents by ordering joint legal custody for all four children. This decision harmonizes with 1986 legislation, effective on August 1, 1986, before the final appealable trial court action. *See* Minn.Stat. § 518.17, subd. 2 (1986). The statute now mandates use of a rebuttable presumption that requested joint legal custody is in the best interests of the children. *Id.* In its March order, the trial court

rescinded the joint legal custody provision. On the record, in the February 28 hearing (where no appearance for appellant occurred), the trial court said the change would correct an unintended use of the word joint; in fact, however, the joint legal custody and split physical custody provisions constituted three numbered paragraphs in the court's January 1986 original conclusions of law.

Appellant asks for an award of legal and physical custody of all four children, putting before us the question whether our decision to affirm should include the trial court's decision against joint legal custody.

The trial court's January order was supported by the evidence in the case and the court's findings about the parents. Respondent asked for change of the order but stated no reason other than the difference between the court's January conclusions and those issued in 1984. The trial court stated no conflict between joint legal custody and the children's best interests, and the record shows none.

Because the statutory presumption became a part of the law of this case before it was finally determined, and because the record shows nothing to rebut the suggestion, we find no basis for denying a provision for joint legal custody of all four children. On the other hand, because the parties have briefed the case solely with reference to appellant's request for reversal of the placement of physical custody, we think that a final decision on legal custody must be made by the trial court. Thus, we vacate the trial court's award of sole legal custody, so that a request for joint legal custody can be put before the trial court free of the requirement for a special showing of changed circumstances.

### 3. *Temporary placement*

In its January 1986 conclusions, the trial court permanently placed physical custody of the couple's youngest child with appellant. On respondent's request, heard in February, the trial court modified the language on this child's custody by declaring the placement to be "temporary" and by reserving the permanent custody issue "for further proceedings." Although the pur-

pose for this change is unclear, it was evidently intended to restore the arrangement ordered in 1984. However, in 1984, the reservation of jurisdiction on permanent custody of this child was expressly in contemplation of a further social study and hearing. A post-judgment social report on the custody of the youngest child was sent to the court services director by the Ashland, Wisconsin social services department on October 24, 1985.

■ Changes in a trial court's custody decision can occur only upon certain changes in circumstances. See Minn.Stat. § 518.18 (1986). An indeterminate reservation of jurisdiction on a final custody question improperly circumvents this statute by permitting unlimited review and modification of the placement. See *Moylan v. Moylan*, 384 N.W.2d 859, 865 (Minn.1986) (trial court's discretion must be exercised within legislated limits); *Beede v. Law*, 400 N.W.2d 831, 834 (Minn.Ct.App.1987) (trial court's necessary powers in dissolution cases are limited by statutory standards and procedures).

The trial court's 1984 "temporary" placement was conditioned upon an evidently imminent review of the award. The record reflects nothing to indicate a review is still pending two years later, nor would such a delayed review appear to come within the purview of an initial custody decision. Moreover, the trial court's latest decision says nothing about an ongoing study and formulation of an initial decision. In addition, evidence of record is clearly sufficient to support a permanent placement of custody of the youngest child with his mother, subject to modification solely as provided in section 518.18.

This issue has also been neglected in briefing because the parties concentrated on the question of physical custody of the older children. Accordingly, we modify the trial court's decision to require either permanence of the present custodial placement for the youngest child or immediate trial court reconsideration of the placement based on lawfully sufficient evidence and findings.

## DECISION

The trial court's March 1986 custody decision is affirmed as modified (1) to permit appellant's request for joint legal custody of the couple's children without a special showing of changed circumstances, and (2) to provide for permanence of the placement of the youngest child's custody placement with appellant, effective 60 days after the date this opinion is filed, save only as that award is altered before that time by a trial court order lawfully supported by competent evidence and particularized findings.

Affirmed as modified.

