In re the Marriage of Nicholas
SUCHER, Petitioner,
Respondent,

v.

Leona SUCHER, Appellant.

No. C5–87–650.

Court of Appeals of Minnesota.

Dec. 8, 1987.

Kent E. Nyberg, Grand Rapids, for respondent.

Stephen C. Aldrich, Minneapolis, for appellant.

Considered and decided by FORSBERG, P.J., and LANSING and NIERENGARTEN, JJ., without oral argument.

## OPINION

NIERENGARTEN, Judge.

Following a dissolution proceeding in which the trial court awarded custody of the parties' children to Nicholas Sucher, Leona Sucher moved for a new trial or amended findings on the grounds of insufficient evidence to support the trial court's findings, additional newly discovered material evidence, and failure to make sufficient findings. Leona Sucher appeals the trial court's order denying these motions. We affirm.

## FACTS

Nicholas and Leona Sucher were married on July 18, 1978. At the time of the parties' separation in April 1986, they had three children, N.A., 7, D., 6, and N., 4 years old.

For the first six years of their marriage, Nicholas worked full-time and Leona did most of the child care. She nursed the children for several months after their birth, took them to the doctor for shots and checkups, fixed their meals, changed their diapers, and kept them clean. In 1985, Nicholas stopped working because of a shoulder injury which required surgery. He then did the laundry, cleaned the house, made occasional meals and provided more care for the children. However, neither party seems to have done much housework. Several witnesses testified that the house was filthy, with moldy dishes, piles of laundry, and human and dog excrement lying around. Child care and meal preparation were haphazard. Nicholas claims that if Leona would not clothe, feed and clean the children when he asked her to, he would.

After the parties separated, Leona enlisted the assistance of a family service aide to improve her housekeeping and parenting skills. Nicholas took the children to the doctor and brought them to a local mental health center for counseling. A relative renting part of Nicholas' house testified that when the children stay with him, he feeds, clothes, and bathes them regularly.

Nicholas was charged in 1974 with drug related offenses, and in 1977 with carrying a loaded firearm in a public place, petty theft, and burglary. All charges were dismissed. Both Nicholas and Leona used drugs during their marriage, and blamed each other for a marijuana-growing apparatus installed in the house.

Leona has filed domestic abuse charges against Nicholas most recently in April 1986. There is also evidence that Leona is attending Parents Anonymous to learn more effective parenting skills, and is seeking a counselor resulting from molestation by her stepfather 16 years previously.

There are allegations of sexual abuse of the children by Leona and a man who was Leona's live-in lover for about a month, based on statements by the children. A volunteer advocate for sexually abused children who had worked with over a hundred sexually abused children testified that she believed D.'s claim that Leona was sexually abusing him. However, in an in camera interview with the trial judge, D. first seemed to say that his father had told him to tell the judge that his mother had abused him, and then appeared to change his mind. The trial court found that there was insufficient evidence to conclude that Leona had perpetrated any acts of sexual

abuse, but that there was considerable evidence to establish that "her friends and associates" have sexually abused the children.

There was evidence that some friends of Leona who stayed with her following the separation were less than wholesome. They included a recent escapee from custody, a girl of three days acquaintance who moved in with Leona for two weeks with her boyfriend, and a girlfriend who was the subject of complaints alleging that she was teaching her daughter "some bad habits, to masturbate and stuff." Two of the children alleged that they had seen their mother lying unclothed on the bed kissing that woman and "making sex."

The trial court found that (1) both parties had served as primary caregiver for the children; (2) the children all expressed a desire to live with their father; (3) there was insufficient evidence to conclude that Leona had sexually abused the children, but considerable evidence that her friends had; (4) both parties were capable of providing sufficient care for the children; (5) Nicholas had a tendency to involve the children in the marital dispute; (6) Leona's friends had either abused the children or behaved in a less than exemplary manner; (7) both parties loved their children and wanted the best for them; (8) Nicholas' more stable extended family could be of benefit to him in nurturing the children; (9) Leona's less than exemplary housecleaning and discipline has shown considerable improvement through her efforts with the county social services department and Parents Anonymous; (10) the inability of the parties to communicate regarding the children made joint custody inappropriate; and (11) the best interests of the children would be served by awarding custody to Nicholas subject to liberal visitation.

## ISSUES

1. Did the trial court abuse its discretion in awarding custody of the children to Nicholas Sucher?

2. Did the trial court err in not appointing a guardian ad litem, either on its own motion or pursuant to appellant's post-trial motion?

3. Did the trial court abuse its discretion in denying appellant's motion for a new trial?

## ANALYSIS

### I

Minn.Stat. § 518.17, subd. 3 (1986) provides that "[i]n determining custody, the court shall consider the best interests of the child * * *." Minn.Stat. § 518.17, subd. 1, lists the relevant factors to be considered and evaluated by the court in determining the "best interests of the child."

The Minnesota Supreme Court has elaborated on these statutory factors with the observation that the "best interests of the child" under the statute are usually served by granting custody to the child's "primary parent." *Pikula v. Pikula*, 374 N.W.2d 705, 713 (Minn.1985) The *Pikula* court adopted 10 indicia of primary parenthood and concluded that when both parents seek custody of a child too young to express a preference, and one parent has been the primary caretaker of the child, the primary caretaker should be awarded custody in the absence of a showing of unfitness. *Id.* at 713.

Leona asserts that she is the primary parent under *Pikula* because she performed all the primary parenting functions during the children's infancy and while Nicholas was employed. However, under *Pikula*, preference is given to the primary parent "at the time the dissolution proceeding is commenced." *Id.* at 714 n. 3.

Here Nicholas produced substantial evidence that after he stopped working and up until the separation, he performed child care functions such as feeding and bathing the children. The fact that Leona performed the same or other functions does not preclude a finding that both parties were primary caregivers at the time of the separation. *See Pekarek v. Pekarek*, 384 N.W.2d 493 (Minn.Ct.App.1986). Consequently the trial court's finding that both parties acted as primary parents is not

manifestly contrary to the evidence as a whole.

■ Leona also argues that even if both parties were primary caregivers, the trial court erred in considering the preferences of the children and failing to follow the recommendation of a social worker that she be given custody. "Appellate review of custody determinations is limited to whether the trial court abused its discretion by making findings unsupported by the evidence or by improperly applying the law." *Pikula*, 374 N.W.2d at 710. The initial custody study made no recommendation as to custody, and the later recommendation at trial that Leona be given custody was based primarily on the social worker's belief that a choice between the two parties had to be made, although he admitted that the results of the investigation of sexual abuse by Leona would affect his recommendation. The trial court did not abuse its discretion by not following the social worker's recommendation.

As to the preferences of the children, there is no definite age at which children are presumed capable of expressing a reasonable preference. However, this court has concluded that children aged 6 and 4 were too young to express a preference, regardless of asserted maturity levels. *See Speltz v. Speltz*, 386 N.W.2d 264, 267 (Minn.Ct.App.1986), *pet. for rev. denied* (Minn. June 30, 1986).

■ Here the children were ages 4, 6, and 7 at the time of trial. While the trial court interviewed each child in camera, the court made no express finding as to whether any of the children was old enough to express a reasonable preference. The oldest child did not exhibit significant maturity, and it appears that Nicholas may have coached the children before the interviews. In these circumstances, the trial court should not have considered the expressed preferences of the children.

■ However, in determining custody, the court also relied on evidence of child abuse, the less than exemplary behavior of friends who resided with Leona, and evidence that Nicholas had a more stable extended family. These findings are not manifestly contrary to the evidence, and support the conclusion that the best interests of the children require that Nicholas have custody.

## II .

■ Leona argues that the trial court abused its discretion in failing to appoint a guardian ad litem to represent the interests of the children, either on its own motion or in response to her post-trial motion. The statute in effect at the time of the trial made appointment of a guardian ad litem discretionary with the court. *See* Minn. Stat. § 518.165 (1986); 1986 Minn.Laws ch. 469. Even though the parties stipulated before trial that a guardian ad litem could be appointed in this case, the trial court's failure to do so was not erroneous.

The trial court found that the advice of a guardian ad litem would have added nothing to the presentation of the facts in this case, since a home study had been ordered and received as evidence[1] and the circumstances of the children had been fully and fairly litigated. The court also observed that the only alternative that a guardian ad litem could have presented would have been the possibility of foster care instead of granting custody to either of the two parties. Given its finding that both parties were capable of caring for the children, the trial court did not abuse its discretion in failing to appoint a guardian ad litem.

## III

Leona argues that the trial court abused its discretion in failing to grant her motion for a new trial on the grounds of insufficient evidence, failure to make sufficient findings, and newly discovered evidence.

---

1. In *M.M. and C.M. v. R.R.M.*, 358 N.W.2d 86, 89 (Minn.Ct.App.1984), we urged the appointment of a guardian ad litem in order that the children's interests be adequately represented where no home studies had been performed.

Similarly, in *Clark v. Clark*, 358 N.W.2d 438, 441 (Minn.Ct.App.1984), we urged the court to appoint a guardian ad litem on remand where there had not even been an evidentiary hearing in connection with a change in custody order.

■ Failure to order a new trial is not an abuse of discretion if the trial court, having reviewed the newly discovered evidence, concludes that its earlier findings and conclusions would not have been changed. *See Wurdemann v. Hjelm*, 257 Minn. 450, 466, 102 N.W.2d 811, 821 (1960), *cert. denied*, 364 U.S. 894, 81 S.Ct. 222, 5 L.Ed.2d 187 (1960).

Leona's other argument—that insufficient weight was given to evidence of her own progress in parenting and of Nicholas' inability to handle his violence—similarly does not require reversal where the court's findings are not manifestly contrary to the evidence as a whole. *See Kennedy v. Kennedy*, 403 N.W.2d 892, 897 (Minn.Ct.App.1987).

### DECISION

The trial court's determination that the best interests of the children would be served by giving Nicholas Sucher custody was not clearly erroneous, and the trial court did not abuse its discretion by failing to appoint a guardian ad litem and denying Leona Sucher's motion for a new trial.

Affirmed.

LANSING, Judge (dissenting).

The failure to appoint a guardian ad litem to represent the interests of the children under the facts of this case requires that we remand for a rehearing. The custody study was completed months before the mid-trial allegation of Leona Sucher's sexual abuse of the children. Although the trial court found there was insufficient evidence to support a conclusion that Sucher had committed acts of abuse, a volunteer advocate believed the allegations and their ultimate truth has not been determined. If, as Leona Sucher asserts, Nicholas Sucher was coaching the children, then an unfounded allegation of abuse may have influenced the court's custody determination.

Both parties requested the appointment of a guardian ad litem. The threat posed to the children's physical and emotional safety required "vigorous, independent representation of the children by counsel acting in their interest and their interest only." *See M.M. and C.M. v. R.R.M.*, 358 N.W.2d 86, 89 (Minn.Ct.App.1984). Such representation would ensure a more thorough evaluation of the fitness of both parents and assist in uncovering the truth of the allegations of abuse.[1] The particular vulnerability of these children, the allegations of sexual abuse, the alleged physical abuse of Leona Sucher by Nicholas Sucher, and the trial court's misplaced reliance on the custodial preference of children ages 7, 6 and 4 require a rehearing after the appointment of a guardian ad litem.

Similarly, while it appears that most of Leona Sucher's newly discovered evidence could have been discovered sooner, that should not preclude a new trial when the outcome affects not only Leona Sucher, but also the three children. Although the trial court stated that the new evidence would not have changed the outcome of the case, it is likely that had the children been independently represented, evidence on Nicholas Sucher's fitness would have been more closely scrutinized.

Finally, I do not believe that the possibility of foster care should have been so lightly dismissed. Despite the court's finding that both parents were capable of providing sufficient care for the children, the facts are sufficiently disturbing to warrant alternative placement until there is substantial progress in overcoming negative parenting patterns.

---

1. Under an amendment which became effective on January 1, 1987, Minn.Stat. § 518.165, subd. 2 (1986), now requires the appointment of a guardian ad litem in any child custody proceeding in which "the court has reason to believe that the minor child is a victim of domestic child abuse or neglect."