432 N.W.2d 483 (1988)
In re the Matter of J.E.P., Petitioner, Appellant,
v.
J.C.P., Respondent.
No. C9-88-1018.
Court of Appeals of Minnesota.
December 6, 1988.
*484 Roselyn J. Nordaune, St. Louis Park, for petitioner, appellant.
Raymond M. Lazar, Susan J. Hartman-Corklin, Minneapolis, for respondent.
Heard, considered and decided by SHORT, P.J., and FORSBERG and KALITOWSKI, JJ.

OPINION
SHORT, Judge.
This is an appeal from a judgment dismissing that part of appellant's petition for a protective order which alleges that respondent has sexually abused the parties' children. We reverse and remand, based on the trial court's failure to appoint a guardian ad litem as required by Minn.Stat. § 518.165, subd. 2 (1986).

FACTS
Appellant and respondent were married in 1980, and have three children (a son, age 6, a daughter, age 4, and a second daughter, age 3). The parties' marriage deteriorated, and they eventually separated. Appellant has maintained throughout the dissolution proceedings that respondent was physically, psychologically and emotionally abusive with her and their children. Appellant began seeking therapy in January, 1986, to deal with what she describes as respondent's escalating abusive and violent behavior toward her. This behavior allegedly included physical violence, threats and humiliation. Appellant realized her need to end the marriage, and began dissolution proceedings.
Sometime during this period of mounting tension between the parties, appellant claims to have suspected that respondent was sexually abusing their first daughter. In August, 1987, when appellant and the children were visiting appellant's family, the first daughter is reported to have confessed to her mother that her father had "touched her." Appellant further testified that she had observed their daughter sitting on the floor with her pants off, looking at her bottom and demonstrating how her father had rubbed her in her genital area. Respondent denies all these allegations, noting that neither appellant nor any other witness actually observed any sexually abusive conduct by him. He argues that the children's remarks are subject to interpretation, and may have been coached. A *485 Minnesota Multiphasic Personality Inventory profile taken by respondent failed to indicate that he is suffering from any apparent personality disorder. By contrast, appellant's Minnesota Multiphasic Personality Inventory profile indicates that she has a mixed personality disorder.
Appellant sought an ex parte temporary order for protection on August 25, 1987. She alleged in her petition that she feared respondent was sexually abusing their first daughter. The order was granted, and appellant was referred to Washington County Social Services. Washington County began an investigation as to whether there were grounds for possible criminal or civil proceedings against respondent. The County also referred appellant and the children to the Midway Hospital Center for Domestic Abuse.
The children were assigned to Midway thereapist Lora Matz. Matz was supervised by Dr. Susan Phipps-Yonas, a psychologist at Midway. Matz, who saw the child in question at regular intervals over a five month period, attempted to discover whether she was a victim of sexual abuse. Matz's case notes contain remarks made by the child which strongly suggest her father had sexually abused her. Matz records that the child, through the use of anatomical dolls, demonstrated how her father had touched her sexually, placing his fingers inside her vagina. The parties' daughter told Matz that she wanted to tell her father, "don't touch my bottom, don't lick me." Both Matz and Dr. Phipps-Yonas concluded in reports submitted to the court that respondent had sexually abused the child.
At a hearing before the trial court, appellant testified to her personal observations of her first daughter's behavior, which tend to reinforce the possibility that sexual abuse occurred. No criminal charges have been filed by Washington County. Appellant testified that her daughter frequently touched her genitalia, pleaded with her mother not to allow her father to sleep with her anymore, asked to have her diaper on at night after she was fully toilet trained, took off her pants and demonstrated how her father had touched her, begged her mother to touch her genitalia and became distraught when her mother refused, and, on two occasions, begged her brother to touch her genitalia in her mother's presence.
Appellant also said that she suspected respondent had sexually abused the parties' son. She testified that their son had told her how his father had tried to teach him to masturbate.
Further evidence of respondent's sexual abuse of the parties' first daughter came from the parties' son. L.H., a live-in baby-sitter employed by the family, submitted an affidavit in which she testified that the parties' son told her that his father was upstairs in bed with his sister, and that they were both naked. The son also reportedly told Matz that he had observed his sister licking her younger sister's genitalia. Matz reports that the son said his sister was "starting to be like my dad."
Other physicians and psychologists who examined the girl could not conclusively determine whether she had been sexually abused. A licensed psychologist who saw her in the summer of 1987, and a medical doctor who saw her in the summer of 1988 both expressed concern that the little girl may have been sexually abused. A second physician, who gave her a more thorough medical examination in February, 1988, found no abnormal scarring or other physical evidence of sexual abuse, but nonetheless concluded, "there is clearly no way that I * * * could rule out the possibility of sexual abuse from this examination."
In November, 1987, the trial judge, pursuant to the appellant's request and the requirements of Minn.Stat. § 518.175, subd. 1 (1986), ordered the parties to submit documentary evidence as to the allegations of sexual abuse. He also appointed Dr. Marion D. Hall, a psychiatrist, to investigate and report to the court concerning respondent's alleged abuse of the parties' children. The court did not, however, order the appointment of a guardian ad litem to represent the childrens' interests. There is no indication in the record that the parties *486 requested that a guardian be appointed.
Dr. Hall submitted her report to the court in January 1988. Her report concluded that there was "no verifiable evidence" that respondent had physically or sexually abused his children. Dr. Hall based her report upon interviews with both of the parents, a review of the various reports, and documents which addressed the allegations. Although she observed the children in the homes of each of their parents, she did not interview the children about the allegations of sexual abuse. Instead, she reviewed the reports submitted by Matz and others to conclude that the allegations of sexual abuse were baseless. She opined that "very ordinary reasonable occurrences" related by the children were distorted by "anxious, threatened adults or by overzealous advocates." The children's disturbed behavior, she explained, was probably caused by their anxiety over being separated from their father. Dr. Hall nonetheless recommended that respondent's visits with his children be supervised for a specified time, to allay residual fears of appellant and the children, and to protect respondent from further unsubstantiated allegations.
On April 19, the trial court issued its finding and order dismissing appellant's petition alleging sexual abuse of the children. On May 23, the court issued additional findings, and modified its original protective order. The order as modified allowed for unsupervised, liberal visitation between respondent and his children. At no point in any of these proceedings was a guardian ad litem appointed to represent the interests of the children.

ISSUE

Did the trial court err by failing to appoint a guardian ad litem upon its own motion?

ANALYSIS
Appellant argues that we should review this case de novo because the facts were submitted to the trial court solely on the basis of documentary evidence. See e.g., Northern States Power Co. v. Williams, 343 N.W.2d 627, 630 (Minn. 1984). We disagree. The trial court had the opportunity to judge the credibility of the key witnesses. The court interviewed both parties, as well as the court-appointed expert. In addition, the trial court heard extensive oral testimony at an earlier hearing from appellant regarding allegations of respondent's abuse. Trial courts have extensive discretion when deciding questions related to visitation. Manthei v. Manthei, 268 N.W.2d 45, 45 (Minn.1978); Theroux v. Boehmler, 410 N.W.2d 354, 356 (Minn.Ct. App.1987). We will not substitute our judgment as to witness credibility for that of the trial court, nor overturn the court's finding of fact unless clearly erroneous. Minn.R.Civ.P. 52.01.
In reviewing this acrimonious visitation dispute in which a determination of the validity of appellant's allegations cannot be made with any degree of certainty, we are deeply troubled by the trial court's (1) failure to make detailed and specific factual findings, (2) exclusive and unexplained reliance on the opinion of the court-appointed expert, who did not personally interview the children as to the alleged multiple episodes of abuse, and (3) focus on the parties' rather than the children's best interests. Although the first two concerns alone would not necessarily constitute grounds for reversal because of our narrow scope of review, the trial court's failure to appoint a guardian ad litem under Minn.Stat. § 518.165, subd. 2 (1986) compels that we reverse and remand this difficult and troubling case. See M.M. v. R.R.M., 358 N.W. 2d 86, 89 (Minn.Ct.App.1984) (although the trial court did not abuse its discretion on the record before it, the record was incomplete because the children lacked a guardian's vigorous, independent representation).
Minn.Stat. § 518.165, subd. 2 requires the trial court to appoint a guardian ad litem "[i]n all proceedings for child custody or for marriage dissolution * * * in which custody or visitation of a minor child is an issue, if the court has reason to believe that the minor child is a victim of *487 domestic child abuse or neglect."[1] "Child abuse" includes the sexual penetration or sexual contact with a person under 16 years of age with whom the actor has a parental or other significant relationship. See Minn.Stat. §§ 626.556, subd. 2(a); 609.342, subd. 1(g) and 609.343, subd. 1(g) (1986). The conduct respondent allegedly engaged in with his daughter would clearly fall within the statutory definition of child abuse.
The trial court in the present case had reason to believe that abuse was occurring. First, Washington County had, at the time, undertaken an independent criminal investigation. Second, appellant and the childrens' therapist testified that the children had described respondent's sexually abusive acts, and had expressed their trauma through disturbed behavior. And third, the court's appointment of an expert witness to discover whether sexual abuse occurred indicates that the court had reason to believe abuse may have been occurring and the matter required further investigation.
The appointment of a guardian is especially important in this case, given the conflicting interpretations of events provided by the parties and other witnesses. The report and notes of therapist Matz, who worked with the children over a five month period, express a strong concern that the little girl may have been the victim of sexual abuse. By contrast, the court-appointed expert testified that the children were probably coached by "anxious and threatened adults or by overzealous advocates."
The Minnesota Supreme Court has strongly encouraged the appointment of a guardian in visitation disputes where the childrens' interests are not otherwise adequately represented. Tischendorf v. Tischendorf, 321 N.W.2d 405, 409 (Minn.1982), cert. denied 460 U.S. 1037, 103 S.Ct. 1426, 75 L.Ed.2d 787 (1983). See also Clark v. Clark, 358 N.W.2d 438, 441 (Minn.Ct.App. 1984) (in custody disputes with numerous charges and countercharges, a guardian should be appointed); M.M. v. R.R.M., 358 N.W.2d 86, 90 (Minn.Ct.App.1984) (reversed and remanded where trial court failed to appoint a guardian ad litem in the face of allegations of sexual abuse). While always strongly encouraged by the appellate courts, the appointment of a guardian ad litem in cases where there is a reason to believe sexual abuse has occurred is now mandated by statute. See Minn.Stat. § 518.165, subd. 2 (1986). We therefore reverse and remand to the trial court with instructions to (1) appoint a guardian ad litem to represent the interests of the children, and (2) conduct such proceedings as necessary to permit fulfillment of the guardian's rights and responsibilities as declared by law. See Minn.Stat. § 518.165 (1986); Minn.R.Fam.Ct.P. 1.02.

DECISION
The trial court erred by failing to appoint a guardian ad litem as required by Minn. Stat. § 518.165, subd. 2 (1986).
REVERSED AND REMANDED.
NOTES
[1] Prior to 1986, the appointment of a guardian ad litem in custody disputes was a decision within the discretion of the trial court. In 1986, the legislature enacted subdivision 2, which requires the appointment of a guardian where the court has reason to suspect the child has been abused or neglected. See 1986 Minn. Laws ch. 469, subds. 1 and 2.